ARTHUR J. KELLY, TRUSTEE, ET AL. *v.*
PAUL KOWALSKY ET AL.

SPEZIALE, C. J., PETERS, ARMENTANO, SHEA and F. HENNESSY, JS.

Argued February 9—decision released April 6, 1982

*David A. Gibson,* for the appellants (plaintiffs).

*Ernest L. Josem,* for the appellees (named defendant et al.).

PETERS, J. The sole issue on this appeal is whether an express reservation of rights may enable a creditor to retain possession of checks

tendered by his debtor in full satisfaction of an outstanding indebtedness without the creditor's loss of his rights to recover the full amount of the claimed indebtedness. The trial court held that retention of the checks constituted an accord and satisfaction and therefore discharged the defendant debtors from their remaining indebtedness. From the judgment limiting the plaintiffs' recovery to the face amount of the checks tendered by the defendants the plaintiffs have taken the present appeal.

There is no dispute about the facts found by the trial court in its memorandum of decision. The plaintiffs, Arthur J. Kelly, Trustee, et al., are trustees of four funds established for the members of the Connecticut Laborers' Union. The defendant Kowalsky Brothers, Inc., and the individual defendants, the Kowalsky brothers, promised, pursuant to a collective bargaining agreement, to make prescribed, periodic contributions to each of these funds. From early 1974, the defendants were not current in their required contributions and were, because of their delinquency, assessed additional sums as costs of collection and as penalties.

On February 14, 1977, the defendants sent the plaintiffs four checks in the total amount of $8635.55, with a covering letter advising that these checks were in full payment of all claims. The plaintiffs' attorney immediately informed the defendants' attorney that the checks were being held, but not cashed, pending further discussions. In the middle of March, the defendants were notified, through telephonic conversations between the attorneys and by correspondence, that the checks in their present form could not be cashed by the plaintiffs because the amount tendered represented only the overdue contributions and failed to cover

the accrued delinquency charges. The defendants, in reply, continued to insist that the checks had been tendered in full satisfaction of all claims against them. They did not, however, ask for the checks to be returned to them, nor did they stop payment upon them. The plaintiffs retained possession of the checks until the date of the trial in September 1980.

At the trial, the defendants filed two special defenses disputing their liability for sums other than the tendered $8635.55. They argued, first, that a representative of the plaintiffs had agreed to allow them additional time, without penalty, to make contributions to the union's funds, and they urged, second, that the plaintiffs' retention of the tendered checks constituted acceptance of the sum of $8635.55 in full payment of all claims then due. The trial court rendered a judgment accepting the defendants' second special defense without ruling on the issue of apparent authority raised by the first special defense.

The issue before us is a narrow one. It is conceded that the checks sent as full payment by the defendants clearly gave notice to the plaintiffs of the terms upon which the checks were tendered.[1] It is conceded that the plaintiffs never cashed the checks but instead clearly gave notice to the defendants that the checks were not being accepted upon the tendered terms. In these circumstances, are the plaintiffs barred from full recovery on their underlying claims because of their retention of the defendants' checks? We hold that they are not.

---

[1] It is apparently conceded, sub silentio, that the amount due the plaintiffs was not liquidated but was instead the subject of a good faith dispute between the parties. See 2 Restatement (Second), Contracts (1981) § 278, comment c; 1 Restatement, op. cit., §§ 73, 74.

The trial court, in finding for the defendants that there had been an accord and satisfaction, relied on three cases, all of which are, on their facts, distinguishable from the present controversy. In *Hanley Co., Inc.* v. *American Cement Co.,* 108 Conn. 469, 472, 143 A. 566 (1928), the debtor's check "was received and collected, without protest or other expression of dissent, so far as appears, until about six weeks later." In *Borst* v. *Ruff,* 137 Conn. 359, 361–62, 77 A.2d 343 (1950), the debtor's checks were retained, in one instance for as long as three months, without any explanation by the creditor of her intentions. In *Tuttle* v. *Martin,* 32 Conn. Sup. 297, 298–99, 352 A.2d 321 (1975), the debtor's checks were received and deposited after the creditor had placed on them an endorsement purporting to preserve his claims. In all of these cases, it was reasonable for the court to infer from the creditor's conduct an acceptance of the debtor's offer tendering payment in full satisfaction of the underlying indebtedness. We have found no other Connecticut cases more favorable to the defendants.

The issue before us is whether to extend the holdings of these cases to create an irrebuttable presumption that a creditor's mere retention of a conditional check necessarily operates as an accord and satisfaction. It may well be that a creditor, no matter what he says, cannot simultaneously cash a check and disown the condition upon which it has been tendered. That certainly was the traditional view of the common law; see 6 Corbin, Contracts (1962) §§ 1277, 1279; 15 Williston, Contracts (3d Ed. 1972) § 1854; 2 Restatement (Second), Contracts (1981) § 281, comment d. Arguably, that traditional doctrine has been undermined by the enactment of General Statutes § 42a-1-207, which purports to give

broad effect to a timely and explicit reservation of rights.[2] We need not today decide that question, upon which the courts and the commentators are in substantial disagreement.[3] It is sufficient for now to draw less rigid lines for a lesser exercise of dominion, the mere retention of a conditional check. When a creditor immediately and fully explains the grounds for his retention of a conditional check, and when a debtor acquiesces in that retention, there is no reason of policy to find that the creditor has agreed to accept an offer of accord which he expressly has rejected. In the present case, the

[2] "[General Statutes] Sec. 42a-1-207. PERFORMANCE OR ACCEPTANCE UNDER RESERVATION OF RIGHTS. A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice,' 'under protest' or the like are sufficient."

[3] For the proposition that § 1-207 of the Uniform Commercial Code has altered the common law of accord and satisfaction, see *Bivins* v. *White Dairy*, 378 So. 2d 1122, 1124 (Ala. Civ. App. 1979) (dictum); *Miller* v. *Jung*, 361 So. 2d 788, 789 (Fla. App. 1978); *Kilander* v. *Blickle Co.*, 280 Or. 425, 429, 571 P.2d 503 (1977) (dictum); *Braun* v. *C. E. P. C. Distributors, Inc.*, 77 App. Div. 2d 358, 433 N.Y.S.2d 447, 449–50 (1980); *Scholl* v. *Tallman*, 247 N.W.2d 490, 492 (S.D. 1976); Calamari & Perillo, Contracts (2d Ed. 1977) § 5-16; White & Summers, Uniform Commercial Code (2d Ed. 1980) § 13-21.

For the contrary view, that § 1-207 does not affect the common law of accord and satisfaction, see *Chancellor, Inc.* v. *Hamilton Appliance Co., Inc.*, 175 N.J. Super. 345, 352, 418 A.2d 1326 (1980); *Brown* v. *Coastal Truckways, Inc.*, 44 N.C. App. 454, 458, 261 S.E.2d 266 (1980); *State Department of Fisheries* v. *J-Z Sales Corporation*, 25 Wash. App. 671, 681–82, 610 P.2d 390 (1980); *Jahn* v. *Burns*, 593 P.2d 828, 830 (Wyo. 1979); Hawkland, "The Effect of U.C.C. § 1-207 on the Doctrine of Accord and Satisfaction by Conditional Check," 74 Com. L.J. 329 (1969); McDonnell, "Purposive Interpretation of the Uniform Commercial Code: Some Implications for Jurisprudence," 126 U. Pa. L. Rev. 795, 824–28 (1978); Rosenthal, "Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code," 78 Col. L. Rev. 48 (1978). The 2 Restatement (Second), Contracts (1981) § 281, comment d, opines that "§ 1-207 . . . need not be read as changing" the common law rules.

creditors' express objection to the debtors' tender is uncontested. The debtors' acquiescence is demonstrated by the uncontradicted evidence that the defendants' attorney, upon inquiry whether the plaintiffs should hold the disputed checks, replied that the plaintiffs should do what they wanted. Furthermore, the defendants, fully on notice of the plaintiffs' intentions, never requested the return of their checks. Finally, the defendants chose not to avail themselves of their right to stop payment on the checks; see General Statutes § 42a-4-403; which would have allowed them full access to the funds covered by the disputed checks.[4] In this case, the trial court was therefore in error in concluding that the plaintiffs' retention of the defendants' checks barred their suit for the remainder of the defendants' indebtedness.

There is error, the judgment is set aside, and the case is remanded for a new trial limited to the issues raised by the first special defense.

In this opinion the other judges concurred.

---

[4] As the plaintiffs noted at oral argument, even in the absence of a stop payment order it is doubtful that the plaintiffs would have been able belatedly to cash the checks, because checks ordinarily must be presented for payment within thirty days of the date of their issuance. See General Statutes § 42a-3-503 (2) (a).