AIR VAN LINES, INC., Appellant,

v.

Jack BUSTER, and Bill Lawrence, individually and d/b/a Keystone Complex, Appellees.

No. 6563.

Supreme Court of Alaska.

Dec. 9, 1983.

W.D. Bennett and Richard J. Todd, Perkins, Coie, Stone, Olsen & Williams, Anchorage, for appellant.

David E. Grashin, Law Offices of Stephen F. Frost, Anchorage, for appellees.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and SINGLETON, Judge.*

## OPINION

SINGLETON, Judge.

### FACTS

Air Van Lines, Inc. [AVL] sued Keystone Complex [Keystone], a partnership, for a balance allegedly due on a contract whereby AVL agreed to perform services and Keystone agreed to pay for the services. Keystone answered raising "accord and satisfaction" as a defense, and moved for summary judgment. The trial court granted Keystone's motion and dismissed the case. AVL appeals. We affirm.

AVL, an Anchorage firm, performed a moving job in Valdez under an agreement with Keystone, a partnership of Jack Buster and Bill Lawrence. Under the original agreement between Keystone and AVL, Keystone was to supply local laborers and a single AVL employee was to supervise the loading.

Bill Reed, AVL's employee, arrived in Valdez Monday night, October 13, 1980. Reed considered the three local laborers provided by Keystone inexperienced. One of them quit after a day and a half. Reed called Bill Lawrence in Anchorage who authorized him to bring two AVL employees from Anchorage to finish the job. Lawrence told Reed to finish the job as soon as possible. The move was completed on Sunday, October 19.

AVL sent Keystone a bill for $11,317.98, itemized as follows:

---

* Singleton, Court of Appeals Judge, sitting by assignment made pursuant to Article IV, Section 16 of the Constitution of Alaska.

| | |
|---|---|
| Van & labor, reg. rate | 4,946.80 |
| Van & labor, overtime | 2,278.19 |
| Packing materials | 3,084.19 |
| Per diem & travel | 1,008.80 |

Buster sent AVL a letter in February. Buster objected to the billing on the ground that he had not authorized AVL to use its own employees, nor had he authorized overtime. According to Buster, the total amount due on the basis of the original agreement was $4,355.56 for the van and labor, plus packing materials.

AVL contacted Bill Lawrence, who stated that Keystone would not pay the per diem and travel expenses of the two extra AVL employees, nor would it pay the overtime charges. AVL offered to reduce its bill by $1,000, the approximate amount of the travel and per diem costs of the two extra men.

Lawrence sent AVL a letter stating that Keystone still objected to paying overtime, and it wanted a further reduction of $2,278.19. The letter enclosed a check in the amount of $8,039.79, "as full and complete payment for all services, equipment and materials provided by your company." The check bore the notation "Endorsement of this check constitutes a complete settlement of your claim."

AVL endorsed the check without any reservation of rights, see AS 45.01.207.[1] However, AVL later sent Keystone a letter stating that the payment had been applied to the debt, and that AVL reserved its right to seek further sums.

## ACCORD AND SATISFACTION

■ An accord is a contract between a creditor and debtor for a settlement of the creditor's claim by some performance other than that which is due. *Stephenson v. Ketchikan Spruce Mills, Inc.*, 412 P.2d 496, 498 (Alaska 1966). Satisfaction is the performance of such a contract. *See* Restatement of Contracts § 417 comment a, at 785–86 (1932).

■ Like any contract, an accord requires an offer, an acceptance, and consideration to be enforceable. AVL seems to concede that the restrictive endorsement constituted an offer to compromise which it accepted by negotiating the check. But AVL contends that because Keystone paid only that portion of the debt that was undisputed, there was no consideration to support a contract of accord. AVL also contends that there was no consideration because Keystone acted in bad faith in disputing the overtime because Keystone knew that it had implicitly authorized overtime. Restatement (Second) of Contracts §§ 74, at 281 (1981). Therefore, AVL claims, no accord and satisfaction occurred.

Keystone argues that there was consideration because the total debt was unliquidated. Keystone also contends that there is no evidence from which a jury could find that it asserted the accord in bad faith.

■ In our view the requirement of adequate consideration is satisfied if Keystone disputed AVL's claim for overtime in good faith. There is no evidence that Keystone expressly authorized overtime payments, acknowledged the validity of AVL's claim for overtime, or conceded that its refusal to pay overtime was in bad faith. Nevertheless, AVL argues that there is sufficient evidence in the record to support an inference that Keystone impliedly authorized overtime. AVL points to evidence that Keystone explicitly authorized the hiring of Anchorage laborers and asked that the work be completed as soon as possible. Thus, AVL claims that it was placed in the position of determining whether it would be less expensive to pay overtime than to ferry the workers back and forth from Anchorage to Valdez during the progress of the job. AVL points out that in order to be finished as soon as possible the job had to continue into the weekend and that the workers

1. AS 45.01.207 states:
   *Performance or acceptance under reservation of rights.* A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner

demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest," or the like are sufficient. (§ 1.207 ch. 114 SLA 1962)

could not work during a weekend without being paid overtime.

■ Since reasonable people could differ in deciding whether AVL's evidence established implied authority to pay overtime, Keystone would not have been entitled to summary judgment in the absence of an accord and satisfaction. We hold, however, that when AVL negotiated Keystone's full payment check it implicitly agreed to an accord and satisfaction. For AVL to avoid summary judgment on the issue of whether the accord was supported by adequate consideration, it would have to establish either bad faith or the absence of a bona fide dispute. AVL could not establish Keystone's bad faith simply by showing that a jury might have found in its favor on the overtime claim. In the absence of some direct evidence of bad faith, AVL must establish that at the time it ignored the restrictive endorsement and cashed the check no bona fide dispute existed as a matter of law. Because reasonable people could differ on the issue of whether Keystone's conduct constituted implied authorization to pay overtime, there was a bona fide dispute on this issue as a matter of law. We therefore hold that AVL negotiated the full payment check at its peril.[2]

■ Although the record would permit an inference supporting the AVL claim that Keystone paid only that part of the debt which was undisputed, a majority of the cases considering this issue hold that a valid accord and satisfaction nevertheless exists. *See generally* Annot., 112 A.L.R. 1219, 1225–36 (1938). The authorities conclude that the entire claim, including both the disputed and undisputed elements, is unitary and not subject to division so long as the whole claim is unliquidated.[3] *See also* 1 S. Williston, *A Treatise on the Law of Contracts* § 129, at 528 (3d ed. 1957); 6 A. Corbin, *Corbin on Contracts* §§ 1281, 1289 (1962); Restatement of Contracts § 417 comment c (1932). AVL's entire claim was unliquidated. Keystone's obligation to pay a part of AVL's invoice, even if conceded, did not serve to render the conceded amount liquidated. Restatement (Second) of Contracts § 74 comment c (1981).

■ We are persuaded to adopt the majority rule and hold that Keystone's conditional offer to pay only the undisputed part of the unliquidated debt in full satisfaction of that debt was supported by consideration. AVL had the option either to tear up the check and sue for what it felt was due or to cash the check and consider the contract dispute resolved. When it cashed the check it effectively accepted Keystone's offer to compromise and satisfy the debt. Alternatively, we hold that the contract of accord and satisfaction was fully executed and therefore not dependent on separate consideration for its validity. 6 A. Corbin, *Corbin on Contracts* § 1289, at 163–66 (1962).

**2.** A proper resolution of this case is obscured by the existence of two contracts: (1) the AVL-Keystone contract for services and (2) the alleged accord and satisfaction reached by the parties in light of their dispute about overtime. We agree with the dissent that reasonable people could differ on the question of whether Keystone implicitly authorized AVL to pay overtime and seek reimbursement. Thus neither party was entitled to summary judgment on that issue. We also agree that evidence, whether direct or circumstantial, of Keystone's bad faith in resisting the overtime would defeat its motion for summary judgment. The question that divides us is whether AVL's good faith in pressing its claim for overtime constitutes sufficient circumstantial evidence of Keystone's bad faith in resisting that claim to prevent summary judgment in Keystone's favor, where AVL negotiated the full payment check in disregard of the restrictive endorsement. We reject such a conclusion on policy grounds. The law favors compromise in order to limit litigation. Accord and satisfaction serves this goal. To require Keystone to litigate the underlying dispute as a prerequisite to obtaining judgment on the accord and satisfaction would be to rob the accord of any value and defeat the law's preference for compromise.

**3.** "An unliquidated claim is one, the amount of which has not been fixed by agreement or cannot be exactly determined by the application of rules of arithmetic or of law." 1 S. Williston, *A Treatise on the Law of Contracts* § 128, at 526 (3d ed. 1957). The AVL–Keystone contract was unliquidated under this definition.

▮ AVL next contends that there is a jury issue as to whether it intended to relinquish its rights by accepting the check. However, regardless of AVL's intentions, a purported reservation of rights is ineffective when a clearly conditional tender is accepted. *See* 15 S. Williston, *A Treatise on the Law of Contracts* §§ 1854–56 (3d ed. 1957); 6 A. Corbin, *Corbin on Contracts* § 1279 (1962); Restatement of Contracts § 420 (1932). AVL's actions speak louder than words. *See Hudson v. Yonkers Fruit Co.,* 258 N.Y. 168, 179 N.E. 373, 375 (1932).

## UCC SECTION 1–207

▮ Finally, AVL urges this court to apply UCC § 1–207, AS 45.01.207, to this transaction. It is argued that under section 1–207, tender of part payment in satisfaction of a debt does not bind the acceptor who expressly reserves his rights. The cases and commentators disagree as to whether section 1–207 changes the common law of accord and satisfaction. The authorities are collected in *Kelly v. Kowalsky,* 186 Conn. 618, 442 A.2d 1355, 1357 n. 3 (1982). We hold that AS 45.01.207 does not preclude summary judgment in Keystone's favor for two reasons.[4] First, we are persuaded by those cases representing the majority of jurisdictions that have considered the issue, which hold that section 1–207 does not alter the common law rules regarding accord and satisfaction by tender of a full payment check, and which limit section 1–207 to continuing disputes on executory contracts. *See, e.g., Milgram Food Stores, Inc. v. Gelco Corp.,* 550 F.Supp. 992, 996–97 (W.D.Mo.1982); *Chancellor Inc. v. Hamilton*

*Appliance Co., Inc.,* 175 N.J.Super. 345, 418 A.2d 1326, 1330 (1980); *Brown v. Coastal Truckways, Inc.,* 44 N.C.App. 454, 261 S.E.2d 266, 269 (1980); *State Department of Fisheries v. J–Z Sales Corp.,* 25 Wash. App. 671, 610 P.2d 390, 395–96 (1980); *Jahn v. Burns,* 593 P.2d 828, 830 (Wyo.1979). *See also Corbin on Contracts* § 1279(C) at 395–98 (Kaufmann Supp.1982); Rosenthal, *Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code,* 78 Colum.L. Rev. 48, 70 (1978).

▮ Alternatively, we hold that if section 1–207 does apply to an accord and satisfaction, AVL's attempted reservation of rights failed to comply with that section which requires an explicit reservation of rights. To be explicit the reservation must be express. Here no reservation was attached to the check at the time it was cashed. AVL merely sent a letter subsequent to cashing the check purporting to reserve rights. More significantly, the letter did not reach Keystone until after the check had been cashed. Keystone never had the opportunity to consider whether to accept AVL's decision or stop payment on the check once AVL declined to accept the check in full satisfaction of the debt. *See Kelly v. Kowalsky,* 186 Conn. 618, 442 A.2d 1355 (1982). Under these circumstances we find that AVL failed to comply with UCC section 1–207. *See* Caraballo, *The Tender Trap: U.C.C. § 1–207 and Its Applicability to An Attempted Accord and Satisfaction by Tendering a Check in a Dispute Arising from a Sale of Goods,* 11 Seton Hall L.Rev. 445, 455–58 (1980).[5]

**4.** Keystone argues that UCC § 1–207 was intended to govern transactions controlled by the sales article (article 2) of the code. Service contracts such as this one are excluded by implication from coverage under article 2. *See* AS 45.02.102 (limiting coverage to sale of goods); AS 45.02.105(a) (defining "goods"). Consequently, Keystone contends UCC 1–207 should not be considered in connection with the AVL-Keystone agreement. Some courts have drawn this distinction but we decline to do so. The effect of the negotiation of a check with a restrictive endorsement in establishing an accord and satisfaction appears to implicate the law of negotiable instruments more than it does the law of sales. In any event we see

little utility in having one rule for sales contracts, another for service contracts, and possibly a third for real estate transactions. *See* Rosenthal, Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code, 78 Colum.L.Rev. 48 (1978).

**5.** This conclusion is supported by AS 09.25.090 which provides:

The person to whom a tender is made shall at the time specify any objection the person may have to the money, instrument, or property, or the person waives it. If the objection is to the amount of money ... the person shall specify the amount ... which the per-

For the above stated reasons the decision of the superior court is AFFIRMED.

MOORE, J., not participating.

RABINOWITZ, Justice, dissenting.

I disagree with the court's holding that Keystone is entitled to summary judgment on the issue of accord and satisfaction. Here we must determine whether there exist any genuine issues of material fact which would render a grant of summary judgment improper. Civ.R. 56(c); *Moore v. State,* 553 P.2d 8 (Alaska 1976). A party opposing summary judgment need only show that issues of material fact exist. *Totem Marine Tug & Barge v. Alyeska Pipeline,* 584 P.2d 15 (Alaska 1978). Air Van Lines made such a showing. Specifically, it was inappropriate for the superior court to dispose summarily of the issue of whether there existed sufficient consideration for the alleged accord and satisfaction.

The enforceability of an accord and satisfaction is dependent upon a determination either that the debtor was disputing his obligation in good faith or that the creditor's claim was in fact doubtful. As the court observed with regard to the good faith requirement in *State Dept. of Fisheries v. J–Z Sales,* 25 Wash.App. 671, 610 P.2d 390, 393 (1980):

> For purposes of accord and satisfaction, the underlying dispute over the debt must be in good faith, *i.e.,* the parties must have a bona fide belief in the validity of their positions with respect to the claim.

Comment d to the Restatement (Second) of Contracts § 281 (1981) specifically provides that the enforceability of an accord is dependent upon a finding that it is supported by adequate consideration, which may take several forms, those relevant here being a good faith belief on the part of the obligor that his original duty is doubtful or a finding that the belief is objectively justifiable. *Id.* 610 P.2d at 382–84. The comment refers to § 74, which states in relevant part that

> (1) Forbearance to assert or the surrender of a claim or defense which proves to be invalid is not consideration unless
>
> (a) the claim or defense is in fact doubtful because of uncertainty as to the facts or the law, or
>
> (b) the forbearing or surrendering party believes that the claim or defense may be fairly determined to be valid.

Restatement (Second) of Contracts § 74, at 185 (1981).

After study of the affidavits and documentation in the record, I am persuaded that the issues of good faith and the objective validity of the dispute could not have been disposed of as a "matter of law," particularly since all factual inferences should have been drawn in favor of Air Van Lines in disposing of this issue.[1] The underlying question is whether Keystone could legitimately dispute Air Van Lines' contention that it authorized Air Van Lines to pay workers overtime when its agent explicitly authorized the hiring of Anchorage laborers and asked that the work be completed "as soon as possible," and when Air Van Lines determined that overtime pay was cheaper than flying them back to Anchorage. It would be reasonable to conclude from these "facts" that Keystone's defense to the Air Van Lines' bill is not being asserted in good faith and that it is not objectively reasonable. Thus, I would

son requires, or is precluded from objecting later. This section shall not be construed to modify or change in any manner corresponding provisions of the Uniform Commercial Code (AS 45.01–45.09).

In our view this section does not modify AS 45.01.207 but serves to strengthen our interpretation of that section requiring a creditor seeking to reserve rights in the face of a full payment check to communicate that intent to the debtor before cashing the check to enable the debtor to consider the creditor's position and either agree or stop payment on the check.

1. In my view, the majority incorrectly places the burden on Air Van Lines of either producing "some direct evidence of bad faith", or establishing "that at the time it ignored the restrictive endorsement and cashed the check no bona fide dispute existed as a matter of law." It is Keystone which had the burden of establishing as a matter of law the absence of bad faith.

hold that the affirmative defense of accord and satisfaction should not be deemed valid as a matter of law.[2]

The majority addresses separately the issues of the presence of good faith and whether payment of an undisputed portion of an unliquidated claim discharges liability for the whole. This approach is misleading, as the proposition that the Air Van Lines' claim was unliquidated presumes either that the issue of good faith has been resolved in favor of Keystone, or that it is irrelevant. However, both of these assumptions are questionable. The issue of whether Keystone acted in good faith remains an open question, for reasons discussed herein. Deeming good faith irrelevant would permit a debtor to pay an amount less than all agree he or she owes and completely escape liability for the disputed amount without any provision for an exchange of consideration. That is precisely the result which the approach taken in *J–Z Sales* and the Restatement § 281 seeks to avoid by requiring that such consideration take the form of avoidance of a bona fide dispute. Admittedly, Air Van Lines was less than cautious in cashing the check despite the clear restrictive endorsement. However, I believe the good faith requirement is too important a consideration to discard.

**2.** *See* Restatement (Second) of Contracts § 74 comment b, at 185 (1981) (a mere assertion or denial of liability does not make a claim doubtful, and the fact that invalidity is obvious may indicate that it was known; in such cases Subsection (1)(b) requires a showing of good faith).