COUNTY FIRE DOOR CORPORATION *v.*
C. F. WOODING COMPANY
(12898)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued December 10, 1986—decision released February 10, 1987

*Donald C. Lunt,* for the appellant (defendant).

*Michael J. Whalen,* with whom, on the brief, was *Martin M. Looney,* for the appellee (plaintiff).

PETERS, C. J. The principal issue in this appeal is whether the Uniform Commercial Code modifies the common law of accord and satisfaction so that a creditor can now effectively reserve his rights against a debtor while cashing a check that the debtor has explicitly tendered in full satisfaction of an unliquidated debt. The plaintiff, County Fire Door Corporation, brought an action in two counts against the defendant, C. F. Wooding Company, to recover moneys allegedly owed for goods sold and delivered. Before trial, the plaintiff withdrew the first count, a suit on a default judgment

obtained in New York. On the second count, the trial court found the issues for the plaintiff and awarded it damages of $2100. The defendant has appealed from the trial court's subsequent denial of its motion to set aside the judgment against it. We find error.

The trial court's articulation and the exhibits at trial establish the following facts. On November 17, 1981, the defendant ordered a number of metal doors and door frames from the plaintiff. The plaintiff undertook responsibility for delivery of the goods to the worksite. Alleging that the plaintiff's delay in delivery of the doors and frames had caused additional installation expenses, the defendant back charged the plaintiff an amount of $2180. The defendant informed the plaintiff that, on the basis of this back charge, and other payments and credits not at issue, the remaining balance due the plaintiff was $416.88. The plaintiff responded by denying the validity of this back charge. According to the plaintiff, the balance due on its account was $2618.88. The defendant immediately replied, in writing, that it would stand by its position on the validity of the back charge and the accuracy of its calculation of the amount owed to the plaintiff.

The defendant thereafter, on January 10, 1983, sent the plaintiff the check that is at the heart of the present controversy. The check was in the amount of $416.88. It bore two legends. On its face was the notation:

> "'Final payment
> Upjohn Project
> Purchase Order #3302 dated 11/17/81.''

On the reverse side, the check stated: "By its endorsement, the payee accepts this check in full satisfaction of all claims against the C. F. Wooding Co. arising out of or relating to the Upjohn Project under Purchase Order #3302, dated 11/17/81.'' The plaintiff did not advise the defendant directly that it planned to cash

this check under protest. Instead, the plaintiff crossed out the conditional language on the reverse side of the check and added the following: "This check is accepted under protest and with full reservation of rights to collect the unpaid balance for which this check is offered in settlement." The plaintiff then indorsed and deposited the check in its account.

The defendant made no further payments to the plaintiff and the plaintiff brought the present action to recover the remaining amount to which it claimed it was entitled. The trial court rendered judgment for the plaintiff on two grounds. The court agreed with the plaintiff that the enactment of General Statutes § 42a-1-207[1] had deprived debtors generally of the power unilaterally to enforce the terms of a conditional tender of a check to their creditors. Furthermore, in the specific circumstances of this case, the court concluded that the plaintiff could rightfully treat the defendant's offer of an accord as if it had been a payment on account, because the amount of the tender had been no more than the amount the defendant itself had calculated to be due and owing to the plaintiff. For these reasons, the court awarded the plaintiff $2100 as the unpaid balance of the account.

The defendant's appeal does not contest the monetary calculation used by the court in arriving at the amount of the judgment against the defendant, but maintains instead that the trial court erred because the plaintiff's cause of action was foreclosed as a matter of law. The defendant maintains that, when the plaintiff knowingly cashed a check explicitly tendered in full satisfaction of an unliquidated debt, the plaintiff became

[1] General Statutes § 42a-1-207 provides: "A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice,' 'under protest' or the like are sufficient."

bound by the terms of settlement that the check contained. The defendant's argument takes issue with both aspects of the contrary ruling of the trial court. First, the defendant claims that the plaintiff's action of cashing this check constituted an acceptance of its offer, including its terms of settlement, despite the plaintiff's reliance on § 42a-1-207 for authority to substitute words of protest for words of satisfaction. Second, the defendant claims that the amount that it tendered the plaintiff constituted a valid offer of an accord and satisfaction because the underlying debt was unliquidated in amount. We agree with both of the defendant's claims. We will, however, take them up in reverse order, because we would not reach the statutory issue if the defendant had failed to establish its common law defense to the plaintiff's cause of action.

## I

When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim. Such a contract is often initiated by the debtor, who offers an accord by tendering a check as "payment in full" or "in full satisfaction." If the creditor knowingly cashes such a check, or otherwise exercises full dominion over it, the creditor is deemed to have assented to the offer of accord. Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract of accord is supported by consideration.[2] *Kelly* v.

---

[2] It may well be that an accord is enforceable, even in the absence of consideration, if it is supported by a debtor's reasonable and foreseeable reliance on a promise by a creditor to forgive the remainder of an outstanding debt. See *D'Ulisse-Cupo* v. *Board of Directors,* 202 Conn. 206, 218, 520 A.2d 217 (1987); *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 205, 520 A.2d 208 (1987); 2 Restatement (Second), Contracts (1981) § 281, comment d and § 290.

*Kowalsky,* 186 Conn. 618, 621, 442 A.2d 1355 (1982); *W.H. McCune, Inc.* v. *Revzon,* 151 Conn. 107, 109, 193 A.2d 601 (1963); *Bull* v. *Bull,* 43 Conn. 455, 462 (1876); 2 Restatement (Second), Contracts (1981) § 281; E.A. Farnsworth, Contracts (1982) § 4.23, esp. p. 282.

A contract of accord and satisfaction is sufficiently supported by consideration if it settles a monetary claim that is unliquidated in amount. This court has had numerous occasions to decide whether, in the context of accord and satisfaction, a claim is unliquidated when the debtor tenders payment in an amount that does not exceed that to which the creditor is concededly entitled. "Where it is admitted that one of two specific sums is due, but there is a dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction. . . . Where the claim is unliquidated any sum, given and received in settlement of the dispute, is a sufficient consideration." *Hanley Co.* v. *American Cement Co.,* 108 Conn. 469, 473, 143 A. 566 (1928); *W.H. McCune, Inc.* v. *Revzon,* supra; *Crowder* v. *Zion Baptist Church, Inc.,* 143 Conn. 90, 98–99, 119 A.2d 736 (1956); *Perryman Burns Coal Co.* v. *Seaboard Coal Co.* 128 Conn. 70, 73, 20 A.2d 404 (1941); *Bull* v. *Bull,* supra[3]; see also 1 Restatement (Second), Contracts (1981) § 74, esp. illustration 4; E.A. Farnsworth, supra, § 4.23, p. 281.

Application of these settled principles to the facts of this case establishes, as the defendant maintains, that the parties entered into a valid contract of accord and satisfaction. The defendant offered in good faith to settle an unliquidated debt by tendering, in full sat-

---

[3] "It would be too technical a use of the doctrine of consideration to release a well-counselled debtor who tenders a nominal amount beyond his admitted debt but to trap one less sophisticated who is induced to pay the undisputed amount in return for his creditor's illusory promise to forgive the rest." *Kilander* v. *Blickle Co.,* 280 Or. 425, 429, 571 P.2d 503 (1977).

isfaction, the payment of an amount less than that demanded by the plaintiff.[4] Under the common law, the plaintiff could not simultaneously cash such a check and disown the condition on which it had been tendered. *Kelly* v. *Kowalsky,* supra, and authorities therein cited. Having received the promised payment, the plaintiff discharged the defendant from any further obligation on this account, unless the enactment of § 42a-1-207 of the Uniform Commercial Code has changed this result.

## II

The principal dispute between the parties is what meaning to ascribe to § 42a-1-207 when it states that "[a] party who with explicit reservation of rights . . . assents to performance in a manner . . . offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice,' 'under protest' or the like are sufficient." The plaintiff contends, as the trial court concluded, that this section gave the plaintiff the authority to cash the defendant's check "under protest" while reserving the right to pursue the remainder of its underlying claim against the defendant at a later time. The defendant maintains that the statutory reference to "performance" contemplates something other than the part payment of an unliquidated debt. We noted in *Kelly* v. *Kowalsky,* supra, 622 and n.3, that there was considerable disagreement in the cases and the scholarly commentaries about the scope of the transactions governed by § 42a-1-207, but did not then undertake to resolve this disagreement. We now decide that § 42a-1-207 does not displace the common law of accord and satisfaction and that the trial court erred in so concluding.

---

[4] When the parties in this case asked the trial court for an articulation of its rulings in favor of the plaintiff, the plaintiff sought a finding that the defendant's tender had been in bad faith. The trial court made no such finding.

Because § 42a-1-207 is part of the Uniform Commercial Code, it is important to reconcile its provisions with those found in other articles of the code. See *Barco Auto Leasing Corporation* v. *House,* 202 Conn. 106, 115, 520 A.2d 162 (1987); *Galvin* v. *Freedom of Information Commission,* 201 Conn. 448, 456, 518 A.2d 64 (1986); W. Grosse & E. Goggin, "Accord and Satisfaction and the 1-207 Dilemma," 89 Com. L.J. 537, 544 (1984). Two likely candidates for such a reconciliation are the provisions of article 3, dealing generally with the law of negotiable instruments, including checks; General Statutes §§ 42a-3-101 through 42a-3-805; and the provisions of article 2, dealing generally with contracts for the sale of goods. General Statutes §§ 42a-2-101 through 42a-2-725.

Article 3 provides little support for reading § 42a-1-207 to permit a creditor unilaterally to change the terms of a check tendered in full satisfaction of an unliquidated debt. As the parties have noted, § 42a-3-112 (1) (f) preserves the negotiability of a check that includes "a term . . . providing that the payee by indorsing or cashing it acknowledges full satisfaction of an obligation of the drawer."[5] There is no such validation, anywhere in article 3, for a term on a check that negates a condition that a drawer has incorporated in a negotiable instrument.[6] On the contrary, General

---

[5] A check is a draft drawn on a bank and payable on demand. General Statutes § 42a-3-104 (2) (b).

[6] General Statutes § 42a-3-407 provides: "(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in (a) the number or relations of the parties; or (b) an incomplete instrument, by completing it otherwise than as authorized; or (c) the writing as signed, by adding to it or by removing any part of it.

"(2) As against any person other than a subsequent holder in due course (a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense; (b) no other alteration discharges

Statutes § 42a-3-407 takes a dim view of the unauthorized alteration of an instrument. Under § 42a-3-407 (1) "[a]ny alteration of an instrument is material which changes the contract of *any* party thereto in *any* respect . . . ." (Emphasis added.) The effect of the material alteration of a completed instrument is either to discharge the liability, on the instrument, of "any party whose contract is thereby changed," or to continue the enforceability of the instrument "according to its original tenor." General Statutes § 42a-3-407 (2) and (3). According to this section, the plaintiff's conduct in substituting words of protest for words of satisfaction would have put the plaintiff at risk of discharging the defendant entirely, if such conduct were deemed to have been fraudulent. General Statutes § 42a-3-407 (2) (a). Even without a finding of fraud, however, the most for which the plaintiff could hope, under article 3, was to enforce the instrument "in full satisfaction," because that was "its original tenor." This result is supported by § 42a-3-802 (1) (b), which provides that, presumptively, the taking of a negotiable instrument suspends the underlying obligation "until the instrument is due," and that "discharge of the underlying obligor on the instrument also discharges him on the obligation."[7] Under General Stat-

---

any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given.

"(3) A subsequent holder in due course may in all cases enforce the instrument according to its original tenor, and when an incomplete instrument has been completed, he may enforce it as completed."

[7] General Statutes § 42a-3-802 provides: "(1) Unless *otherwise* agreed where an instrument is taken for an underlying obligation (a) the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor; and (b) in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation.

"(2) The taking in good faith of a check which is not post-dated does not of itself so extend the time on the original obligation as to discharge a surety."

utes § 42a-3-603 (1), a drawer is discharged from liability on an instrument "to the extent of his payment or satisfaction."[8]

The impact of these various article 3 rules is clear. Because the check tendered by the defendant was only enforceable "according to its original tenor," the plaintiff, by receiving "payment or satisfaction," discharged the defendant not only on the instrument but also on the underlying obligation. See J. White & R. Summers, Uniform Commercial Code (2d Ed. 1980) pp. 603–604 n.57. To read § 42a-1-207 to validate the plaintiff's conduct in this case would, therefore, fly in the face of the relevant provisions of article 3, which signal the continued vitality of the common law principles of accord and satisfaction.[9]

---

[8] General Statutes § 42a-3-603 (1) provides: "The liability of any party is discharged to the extent of his payment or satisfaction to the holder even though it is made with knowledge of a claim of another person to the instrument unless prior to such payment or satisfaction the person making the claim either supplies indemnity deemed adequate by the party seeking the discharge or enjoins payment or satisfaction by order of a court of competent jurisdiction in an action in which the adverse claimant and the holder are parties. This subsection does not, however, result in the discharge of the liability (a) of a party who in bad faith pays or satisfies a holder who acquired the instrument by theft or who, unless having the rights of a holder in due course, holds through one who so acquired it; or (b) of a party, other than an intermediary bank or a payor bank which is not a depositary bank, who pays or satisfies the holder of an instrument which has been restrictively endorsed in a manner not consistent with the terms of such restrictive endorsement."

[9] An earlier version of the Uniform Commercial Code, prior to its enactment in this state, contained a provision, § 3-802 (3), that would have permitted a check tendered in full satisfaction of an obligation to discharge an underlying obligation even when that obligation was undisputed and liquidated. Section 3-802 (3) read as follows: "Where a check or similar payment instrument provides that it is in full satisfaction of an obligation the payee discharges the underlying obligation by obtaining payment of the instrument unless he establishes that the original obligor has taken unconscionable advantage in the circumstances." It was deleted in 1952 "on the ground that it would work hardship and was open to abuse." Uniform Commercial Code, 1952 Official Draft (Sup. No. 1) p. 25. None of the legislative history surrounding this section indicates that the draftsmen of article

Although § 42a-1-207 does not fit easily within the principles of article 3 that govern checks, the section has a close and harmonious connection with article 2. Article 2 regulates ongoing conduct relating to performance of contracts for the sale of goods. That article recurrently draws inferences from acquiescence in, or objection to, the performance tendered by one of the contracting parties. A course of performance "accepted or acquiesced in without objection" is relevant to a determination of the meaning of a contract of sale. General Statutes § 42a-2-208 (1).[10] Between merchants, proposals for additional terms will be added to a contract of sale unless there is a timely "notification of objection." General Statutes § 42a-2-207 (2) (c); see W. Grosse & E. Goggin, supra, 551.[11] A buyer who is confronted by a defective tender of goods must make a seasonable objection or lose his right of rejection. General Statutes §§ 42a-2-602 (1), 42a-2-605, 42a-2-606 (1), 42a-2-607 (2);[12] *Plateq Corporation* v. *Machlett Labora-*

3 contemplated that § 1-207 would affect § 3-802 (3). This conclusion is further buttressed by the fact that these two sections were never cross-referenced in the relevant Official Comments. See A.J. Rosenthal, "Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code," 78 Colum. L. Rev. 48, 58–61 (1978).

[10] General Statutes § 42a-2-208 (1) provides: "Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement."

[11] General Statutes § 42a-2-207 (2) provides: "The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) The offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received."

[12] General Statutes § 42a-2-602 (1) provides: "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."

General Statutes § 42a-2-605 provides: "(1) The buyer's failure to state in connection with rejection a particular defect which is ascertainable by reasonable inspection precludes him from relying on the unstated defect

*tories, Inc.*, 189 Conn. 433, 441–42, 456 A.2d 786 (1983); *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 270–72, 439 A.2d 314 (1981). In an instalment sale, a party aggrieved by nonconformity or default that substantially impairs the value of the contract as a whole will nonetheless have reinstated the contract "if he accepts a nonconforming instalment without seasonably notifying of cancellation . . . ." General Statutes § 42a-2-612 (3).[13] A contract whose performance has become impracticable requires the buyer, after-notification by the seller, to offer reasonable alternatives for the modification or the termination of the affected contract; the buyer's failure to respond, within a reasonable period of time, causes the

to justify rejection or to establish breach (a) where the seller could have cured it if stated seasonably; or (b) between merchants when the seller has after rejection made a request in writing for a full and final written statement of all defects on which the buyer proposes to rely.

"(2) Payment against documents made without reservation of rights precludes recovery of the payment for defects apparent on the face of the documents."

General Statutes § 42a-2-606 (1) provides: "Acceptance of goods occurs when the buyer (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or (b) fails to make an effective rejection as provided by subsection (1) of section 42a-2-602, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or (c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him."

General Statutes § 42a-2-607 (2) provides: "Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a nonconformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by this article for nonconformity."

[13] General Statutes § 42a-2-612 (3) provides: "Whenever nonconformity or default with respect to one or more instalments substantially impairs the value of the whole contract there is a breach of the whole. But the aggrieved party reinstates the contract if he accepts a nonconforming instalment without seasonably notifying of cancellation or if he brings an action with respect only to past instalments or demands performance as to future instalments."

sales contract to lapse. General Statutes § 42a-2-616 (1) and (2).[14] In these and other related circumstances, article 2 urges the contracting parties to engage in a continuing dialogue about what will constitute acceptable performance of their sales contract. See generally J. White & R. Summers, supra, §§ 3-1 through 3-9. It is entirely consistent with this article 2 policy to provide, as does § 42a-1-207, a statutory methodology for the effective communication of objections. See J. McDonnell, "Purposive Interpretation of the Uniform Commercial Code: Some Implications for Jurisprudence," 126 U. Pa. L. Rev. 795, 828 (1978).

From the vantage point of article 2, it is apparent that § 42a-1-207 contemplates a reservation of rights about some aspect of a possibly nonconforming tender of goods or services or payment in a situation where the aggrieved party may prefer not to terminate the underlying contract as a whole. See, e.g., *Cherwell-Ralli, Inc.* v. *Rytman Grain Co.,* 180 Conn. 714, 718, 433 A.2d 984 (1980); W. Grosse & E. Goggin, supra, 551; A. Rosenthal, "Discord and Satisfaction: Section 1-207 of the Uniform Commercial Code," 78 Colum. L. Rev. 48, 63 (1978). Indeed, the Official Comment to § 42a-1-207 itself explains that the section supports ongoing contractual relations by providing "machinery for the continuation of performance along the lines contemplated by the contract despite a pending dis-

---

[14] General Statutes § 42a-2-616 (1) and (2) provide: "(1) Where the buyer receives notification of a material or indefinite delay or an allocation justified under the preceding section he may by written notification to the seller as to any delivery concerned, and where the prospective deficiency substantially impairs the value of the whole contract under the provisions of section 42a-2-612 relating to breach of instalment contracts then also as to the whole, (a) terminate and thereby discharge any unexecuted portion of the contract; or (b) modify the contract by agreeing to take his available quota in substitution.

"(2) If after receipt of such notification from the seller the buyer fails so to modify the contract within a reasonable time not exceeding thirty days the contract lapses with respect to any deliveries affected."

pute." See W.D. Hawkland, "The Effect of U.C.C. § 1-207 on the Doctrine of Accord and Satisfaction by Conditional Check," 74 Com. L.J. 329, 331 (1969). It is significant, furthermore, that the text of § 42a-1-207 recurrently refers to "performance," for "performance" is a central aspect of the sales transactions governed by article 2. By contrast, article 3 instruments, which promise or order the payment of money, are not characteristically described as being performed by anyone. The contracts encapsulated in various forms of negotiable instruments instead envisage conduct of negotiation or transfer, indorsement or guaranty, payment or acceptance, and honor or dishonor. See, e.g., §§ 42a-3-201, 42a-3-413, 42a-3-414, 42a-3-416, 42a-3-418; see generally J. White & R. Summers, supra, §§ 13-6 through 13-10, 13-12. We conclude, therefore, that, in circumstances like the present, when performance of a sales contract has come to an end, § 42a-1-207 was not intended to empower a seller, as payee of a negotiable instrument, to alter that instrument by adding words of protest to a check tendered by a buyer on condition that it be accepted in full satisfaction of an unliquidated debt.

Our conclusion is supported by the emerging majority of cases in other jurisdictions. While the case law was divided five years ago, when we postponed resolution of the controversy about the meaning of § 42a-1-207; *Kelly* v. *Kowalsky,* supra, 621–22; it is now the view of the substantial majority of courts that have addressed the issue that § 42a-1-207 does not overrule the common law of accord and satisfaction. See *Air Van Lines, Inc.* v. *Buster,* 673 P.2d 774, 779 (Alaska 1983); *Pillow* v. *Thermogas Co. of Walnut Ridge,* 6 Ark. App. 402, 405, 644 S.W.2d 292 (1982); *Connecticut Printers, Inc.,* v. *Gus Kroesen, Inc.,* 134 Cal. App. 3d 54, 60, 184 Cal. Rptr. 436 (1982); *R.A. Reither Construction, Inc.,* v. *Wheatland Rural Electric Assn.,* 680 P.2d 1342, 1344

(Colo. App. 1984); *Eder* v. *Yvette B. Gervey Interiors, Inc.,* 407 So. 2d 312, 314 (Fla. App. 1981); *Alston* v. *Insured Credit Services, Inc.,* 143 Ga. App. 172, 173, 237 S.E.2d 680 (1977); *Stultz Electric Works* v. *Marine Hydraulic Engineering Co.,* 484 A.2d 1008, 1012 (Me. 1984); *Cass Construction Co.* v. *Brennan,* 222 Neb. 69, 75–76, 382 N.W.2d 313 (1986); *Chancellor, Inc.* v. *Hamilton Appliance Co.,* 175 N.J. Super. 345, 352, 418 A.2d 1326 (1980); *Brown* v. *Coastal Truckways,* 44 N.C. App. 454, 458, 261 S.E.2d 266 (1980); *Les Schwab Tire Centers* v. *Ivory Ranch, Inc.,* 63 Or. App. 364, 664 P.2d 419, 424 (1983); *Marton Remodeling* v. *Jensen,* 706 P.2d 607, 610 (Utah 1985); *Department of Fisheries* v. *J-Z Sales Corporation,* 25 Wash. App. 671, 681–82, 610 P.2d 390 (1980); *Jahn* v. *Burns,* 593 P.2d 828, 830 (Wyo. 1979); contra *Bivins* v. *White Dairy,* 378 So. 2d 1122, 1124 (Ala. Civ. App. 1979); *Miller* v. *Jung,* 361 So. 2d 788, 789 (Fla. App. 1978); *Majestic Building Material Corporation* v. *Gateway Plumbing,* 694 S.W.2d 762, 765–66 (Mo. App. 1985); *Braun* v. *C.E.P.C. Distributors, Inc.,* 77 App. Div. 2d 358, 361, 433 N.Y.S.2d 447 (1980); *Scholl* v. *Tallman,* 247 N.W.2d 490, 492 (S.D. 1976). The majority finds support as well in much of the recent scholarly commentary. See 2 Restatement (Second), Contracts (1981) § 281, comment d; R. Anderson, Uniform Commercial Code (1984) § 3-408-56; W. Grosse & E. Goggin, supra, 546; W.D. Hawkland, supra, 331; J. McDonnell, supra, 824–28; A. Rosenthal, supra, 61; contra J. Calamari & J. Perillo, Contracts (2d Ed. 1977) § 5-16; J. White & R. Summers, supra, § 13-21.

Both under prevailing common law principles, and under the Uniform Commercial Code, the parties in this case negotiated a contract of accord whose satisfaction discharged the defendant from any further monetary obligation to the plaintiff. The plaintiff might have avoided this result by returning the defendant's check

uncashed, but could not simultaneously disregard the condition on which the check was tendered and deposit its proceeds in the plaintiff's bank account.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other justices concurred.