**DANAC, INC., Appellant and Cross–Appellee,**

v.

**GUDENAU & COMPANY, INC., Appellee and Cross–Appellant.**

**Nos. S–1729, S–1767.**

Supreme Court of Alaska.

March 18, 1988.

Shawn J. Holliday, Robinson, Devine & Holliday, Anchorage, for appellant and cross-appellee.

Joseph N. Barcott, Anchorage, for appellee and cross-appellant.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal and cross-appeal arise from certain rulings of the superior court and a jury verdict in favor of Gudenau in connection with its claim for wrongful termination of a labor subcontract by its general contractor Danac. The issues in this appeal involve Danac's affirmative defense of accord and satisfaction, Danac's entitlement to a new trial on the issue of damages or to remittitur, and the adequacy of Danac's notice of intent to terminate the subcontract. Gudenau's cross-appeal challenges the superior court's refusal to instruct the jury on punitive damages.

## I. FACTS.

In October 1983, Gudenau, the subcontractor, entered into a subcontract with Danac, the general contractor, to shingle two buildings at the United States Coast Guard Support Center in Kodiak. The shingles were to be supplied by Danac and were subject to Coast Guard approval. A dispute arose in April 1984 concerning Danac's obligation to determine the quality of the shingles and to sort them. Gudenau informed Danac that it would have no choice but to cease operation if Danac would not supply acceptable shingles. By letter on May 4, Danac took the position that it was Gudenau's responsibility to ex-

ercise its professional judgment to determine which shingles to use for the exposed exterior or for underlayers, and which to reject altogether. Danac considered this letter notice to Gudenau of its intention to terminate the subcontract.[1] Gudenau responded by reiterating its belief that inspection and quality control were Danac's responsibility and stating that it would not install the shingles supplied absent their approval by Danac quality control personnel. On May 9, Danac advised Gudenau orally that the subcontract would be in jeopardy and "could possibly be terminated" if crews did not return to the worksite. Gudenau did not return to work and Danac terminated the subcontract that day.

At the time of termination, Gudenau had completed 20–25% of the work required under the subcontract. According to Danac, the parties in May negotiated a final payment of $11,173.94 for all work performed, and Gudenau picked up a check for that sum on May 22. Gudenau acknowledges picking up the check but contends that no such negotiations occurred, that the parties did not agree on the amount to be paid, and that they did not agree that the $11,174 payment constituted final payment. Gerald Gudenau testified that he was surprised to find, when he picked up the check from Danac, that his company's final payment figures did not match Danac's. A notation on the check stated "Final Payment," but Gudenau crossed out the notation and cashed the check on May 24. By letter dated May 22 (but apparently not received until after the check was cashed), Gudenau informed Danac that it considered

the check only partial payment for the work completed and that it did not waive any of its rights against Danac by accepting the payment.[2]

## II.  PROCEEDINGS BELOW.

Prior to trial Danac moved for summary judgment dismissing Gudenau's claims for damages on the ground that the parties had entered into an accord in May 1984, and "[t]hat accord having been satisfied the debt at issue in this litigation is dissolved and eliminated." Danac based its motion for summary judgment in part on its letter of May 18, 1984, to Gudenau. This letter reads, where relevant, as follows:

Gudenau & Company

. . . .

Subject: Final Payment; Work Completed as of 9 May, 1984

Gentlemen:

After review, Danac, Inc. will issue a check in the amount of $11,173.94 for work performed as of May 9, 1984. The amount was derived in the following manner.

. . . .

Danac, Inc. feels this is a fair and equitable figure based off numbers previously agreed to by Danac and Gudenau & Company.

In support of its summary judgment motion Danac further relied on the fact that Gudenau had negotiated the check on May 24, 1984.[3]

In opposition to Danac's motion, Gudenau took the position that its letter of May

1.  The letter reads in pertinent part:
    [T]his correspondence serves as confirmation of the following items discussed [at a meeting of the parties' representatives held on May 2]:
    . . . .
    3) Gudenau & Co. will be expected to use their professional judgment in what shingles will look best exposed and what shingles would be in the best interest to all parties used as underlayment.
    The outlined procedures emphises [sic] your contractual obligations as outlined in article 7 of our subcontract. You will continue to perform in accordance with the contract specifications, drawings, and direction received by Danac, Inc.

2.  Gudenau's May 22, 1984, letter to Danac reads in pertinent part as follows:
    Thank you very much for your check in the amount of $11,173.94. . . .
    We do not agree that this is our final payment, but in fact, only a partial payment for work completed to date.
    In accepting this partial payment, we do not waive any claims that we may have against your firm.

3.  Danac also asserted that it did not receive until May 25, 1984, notice from Gudenau that Gudenau did not consider the payment to be a final settlement and did not consider its negotiation of the check a waiver of its claims against Danac.

22, 1984,[4] was a sufficient reservation of rights under AS 45.01.207.[5] Gudenau further argued that Danac could have stopped payment on the check and therefore was precluded from asserting that the parties had entered into an accord and satisfaction. Gudenau additionally contended that, even assuming an accord and satisfaction, the accord speaks only "for work performed as of May 9, 1984" and does not address Gudenau's claims for lost profits based on contract termination.

On January 16, 1986, the superior court entered an order denying Danac's motion for summary judgment. Following a jury verdict and judgment in favor of Gudenau, Danac appeals.

## III.  ACCORD AND SATISFACTION.

Resolution of this issue is controlled by *Air Van Lines, Inc. v. Buster,* 673 P.2d 774 (Alaska 1983). In that case Air Van Lines sued Keystone for a balance allegedly due on a services contract. Keystone answered raising "accord and satisfaction" as a defense and moved for summary judgment. The superior court granted Keystone's motion and dismissed the case. On appeal we affirmed. *Id.* at 776.

After a dispute over billing had arisen between the parties, Keystone sent Air Van a letter and a check in the amount of $8,039.79 "as full and complete payment for all services, equipment, and materials provided by your company." *Id.* at 777. The check bore the notation "Endorsement of this check constitutes a complete settlement of your claim." *Id.* Thereafter Air Van endorsed the check without any reservation of rights. *Id.* Air Van did, however, send Keystone a letter stating that the $8,039.79 payment had been applied to

the debt and that Air Van reserved its right to seek further sums. *Id.*

On appeal, we observed:

An accord is a contract between a creditor and a debtor for a settlement of the creditor's claim by some performance other than that which is due. *Stephenson v. Ketchikan Spruce Mills, Inc.,* 412 P.2d 496, 498 (Alaska 1966). Satisfaction is the performance of such a contract. *See* Restatement of Contracts § 417 comment a, at 785–86 (1932).

*Id.*

Of particular significance to the instant case is our holding that when Air Van negotiated Keystone's full payment check, it implicitly agreed to an accord and satisfaction. *Id.* at 778. In this regard we said that Air Van

had the option either to tear up the check and sue for what it felt was due or to cash the check and consider the contract dispute resolved. When it cashed the check it effectively accepted Keystone's offer to compromise and satisfy the debt.

*Id.*

Concerning the question of Air Van's purported reservation of rights to seek further sums against Keystone, we said:

However, regardless of [Air Van's] intentions, a purported reservation of rights is ineffective when a clearly conditional tender is accepted. *See* 15 S. Williston, *A Treatise on the Law of Contracts* §§ 1854–56 (3d ed. 1957); 6 A. Corbin, *Corbin on Contracts* § 1279 (1962); Restatement of Contracts § 420 (1932). AVL's actions speak louder than words. *See Hudson v. Yonkers Fruit Co.,* 258 N.Y. 168, 179 N.E. 373, 375 (1932).

*Id.* at 779.[6]

In the instant case it is undisputed that there was a bona fide dispute between the

---

**4.** *See supra* note 2.

**5.** AS 45.01.207 states:

A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest," or the like are sufficient.

**6.** We additionally held that AS 45.01.207 does not alter the common law rules regarding accord and satisfaction by tender of a full payment check. We further stated as an alternative holding that even if AS 45.01.207 applied to an accord and satisfaction, Air Van's attempted reservation of rights failed to comply with that section, which requires an explicit reservation of rights.

To be explicit the reservation must be express. Here no reservation was attached to the check

parties as to how much Danac owed Gudenau under the subcontract. It is further undisputed that Danac sent Gudenau a letter containing an offer of final payment; that Danac issued a final payment check; [7] that Gudenau crossed out the "final payment" notation on the check and negotiated the check; and that at the same time it negotiated the final payment check, Gudenau wrote a reservation of rights letter to Danac.

■■■ Like the appellant in *Air Van Lines,* when Gudenau negotiated Danac's full payment check it implicitly agreed to an accord and satisfaction. Gudenau had the option to destroy the check and sue for all damages to which it believed it was entitled or to negotiate the check and consider the subcontract dispute settled. *See*

at the time it was cashed. AVL merely sent a letter subsequent to cashing the check purporting to reserve rights. More significantly, the letter did not reach Keystone until after the check had been cashed. Keystone never had the opportunity to consider whether to accept AVL's decision or stop payment on the check once AVL declined to accept the check in full satisfaction of the debt. Under these circumstances we find that AVL failed to comply with [AS 45.01.207].
*Id.* at 779 (citations omitted).

7. Danac took the position that the $11,173.94 amount included an extra payment of $3,071.30 in compromise and settlement of the dispute.

*Air Van Lines,* 673 P.2d at 778. Gudenau's purported reservation of rights was ineffective in light of its acceptance of Danac's conditional tender.[8]

Thus we conclude that the superior court erred in failing to grant Danac's motion for summary judgment dismissing Gudenau's complaint on the basis of Danac's affirmative defense of accord and satisfaction.[9]

REVERSED and REMANDED with directions to enter judgment in accordance with this opinion.

8. *Air Van Lines v. Buster,* 673 P.2d 774 (Alaska 1983); *Les Schwab Tire Centers of Oregon, Inc. v. Ivory Ranch, Inc.,* 63 Or.App. 364, 664 P.2d 419 (1983); *State, Dep't of Fisheries v. J–Z Sales Corp.,* 25 Wash.App. 671, 610 P.2d 390 (1980); *Milgram Food Stores, Inc. v. Gelco Corp.,* 550 F.Supp. 992 (W.D.Mo.1982).

9. Our disposition of the accord and satisfaction issue makes unnecessary resolution of any of the remaining issues in this appeal and cross-appeal.