DAYS INN OF AMERICA, INC. *v.* 161 HOTEL GROUP, INC., ET AL.
(AC 18486)

O'Connell, C. J., and Lavery and Healey, Js.

Argued April 26—officially released September 28, 1999

*Michael Nazarko*, pro se, with whom, on the brief, was *Thomas Nazarko*, pro se, the appellants (defendants).

*Daniel J. Klau*, for the appellee (plaintiff).

*Opinion*

LAVERY, J. The defendants Michael Nazarko and Thomas Nazarko[1] appeal from a decision of the trial

---

[1] A default judgment was rendered against the named defendant prior to the trial against the defendants Michael Nazarko and Thomas Nazarko. We refer in this opinion to Michael Nazarko and Thomas Nazarko as the defendants.

court rendering judgment against them in the amount of $144,842.57, plus costs, as personal guarantors of a franchise agreement between Days Inn of America Franchising, Inc.,[2] and East Lyme Budget Hotel Partnership. The defendants claim that the trial court improperly (1) precluded them from entering into evidence documents relating to the bankruptcy of East Lyme Budget Hotel Partnership, (2) concluded that the license agreement obligated them to make payment on their guarantees to Days Inn, (3) refused to permit them to amend their answer, (4) excluded evidence of the formation of a partnership and (5) found the defendants liable for the partnership debt without first finding the partnership liable. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. On February 24, 1986, Days Inn entered into a license agreement with East Lyme Budget Hotel Partnership (East Lyme Partnership).[3] East Lyme Partnership did so with the intention of managing a Days Inn Hotel. That same day, Thomas Nazarko executed a guarantee agreement with Days Inn, binding himself to the license agreement and becoming a personal guarantor of the license agreement between Days Inn and East Lyme Partnership. Calvert Property E.L. Limited Partnership and 161 Hotel Group, Inc., were the original partners of East Lyme Partnership.

The defendants, who were brothers and officers of 161 Hotel Group, Inc., replaced Calvert Property E.L.

[2] Days Inn of America Franchising, Inc., is the predecessor in interest of the plaintiff Days Inn of America, Inc. Days Inn of America Franchising, Inc., originally commenced this action. On January 14, 1998, the trial court allowed the substitution of Days Inn of America, Inc., as the plaintiff. Both entities hereinafter shall collectively be referred to as Days Inn.

[3] On June 2, 1986, East Lyme Budget Hotel Partnership changed its name to East Lyme Budget Hotel Limited Partnership. These entities collectively will be referred to as East Lyme Partnership.

Limited Partnership as partners in East Lyme Partnership on September 30, 1989.[4] Along with an "Addendum to License Agreement" affecting that change, the defendants executed a supplemental guarantee agreement under which they personally guaranteed East Lyme Partnership's obligations under the license agreement and bound themselves to that agreement.[5]

On June 19, 1995, East Lyme Partnership filed a petition under chapter 11 of the Bankruptcy Code. From June 19, 1995, through September 9, 1996, the hotel managed by East Lyme Partnership continued to operate as a debtor in possession. During that time, various fees due to Days Inn accrued totaling $144,842.57 and were unpaid.

On February 13, 1997, Days Inn commenced an action against the defendant 161 Hotel Group, Inc., and the defendants Nazarko to collect the fees due. After a default judgment was rendered against 161 Hotel Group, Inc., on January 1, 1998, the claims against the defendants were tried to the court on May 11, 1998. On May 13, 1998, the court issued a memorandum of decision finding in favor of Days Inn and rendered judgment against the defendants in the amount of $144,842.57 plus costs. The court credited the testimony

---

[4] As of September 30, 1989, the three partners of East Lyme Partnership and their partnership interests were Michael Nazarko (25 percent), Thomas Nazarko (25 percent) and 161 Hotel Group, Inc., (50 percent).

[5] The supplemental guarantee agreement, which was signed by the defendants in their individual capacities, states in relevant part: "As an inducement to [Days Inn] to execute the preceding transfer and assumption of license agreement, dated as of even date herewith, with East Lyme Budget Hotel Partnership, as licensee, the undersigned (if more than one, jointly and severally) hereby agree to be bound by all terms of the license agreement and any amendments thereof and supplements thereto, including all addenda, schedules and exhibits now or hereafter existing, and irrevocably, unconditionally and personally guarantee to [Days Inn], its affiliates, successors and assigns, that all of licensee's obligations thereunder . . . and under any promissory note issued by licensee to [Days Inn] or its order will be punctually paid and performed."

of the Days Inn's witnesses, but found the testimony of Thomas Nazarko neither credible nor accurate. The court also concluded that the defendants were liable on their personal guarantee agreements and that the bankruptcy of the partnership did not excuse their liability as guarantors. This appeal followed.

I

The defendants first claim that the trial court improperly precluded them from entering into evidence certain documents relating to the bankruptcy of East Lyme Partnership. We do not agree.

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Citations omitted; internal quotation marks omitted.) *State* v. *Hines*, 243 Conn. 796, 801, 709 A.2d 522 (1998).

The defendants cite in their brief two allegedly improper evidentiary rulings. The first involved a failed attempt by Michael Nazarko to enter into evidence a document characterized as a preliminary bankruptcy order authorizing the use of rents and receipts by East Lyme Partnership to keep the hotel running.[6] As Days

---

[6] Michael Nazarko, with the permission of the court and by agreement, speaking for himself and his brother, who were both pro se, proceeded as follows:

"Mr. Michael Nazarko: I'd like to give you this. Could you identify this document?

"Mr. Thomas Nazarko: This is the initial preliminary order when we filed chapter 11 authorizing the use of rents and receipts to—basically carry on

Inn correctly noted at trial, the document was not relevant. The document related to the bankruptcy proceeding and not to the liability of the defendants as guarantors. The second ruling occurred when the trial court sustained Days Inn's objection to a question related to the bankruptcy on the ground that it was beyond the scope of cross-examination.[7] The court properly exercised its discretion in concluding that the testimony was beyond the scope of cross-examination. Accordingly, the trial court did not abuse its discretion in making either of these rulings.

## II

The defendants next claim that the trial court improperly concluded that the license agreement did not absolve them from liability for the debt of East Lyme Partnership. We do not agree.

Specifically, the defendants challenge the trial court's conclusion of law that the franchise agreement and the guarantee made them personally liable for the debt. The defendants point to § 19 (c) of the 1986 license agreement, which states in essence that the license

---

the business ongoing.

"Mr. Michael Nazarko: I'd like to submit this.

"[Plaintiff's Counsel]: Your Honor, I'm going to object. Again, this is evidence of the bankruptcy proceeding. It's not an issue here. It's a bankruptcy proceeding not entailing either of the defendants. It's completely and totally immaterial and, in fact, irrelevant to this action. It doesn't do anything to discharge the debt of [Days Inn]. And I don't even think—

"The Court: All right. I'll sustain the objection. You may mark it for identification."

[7] On redirect examination of Thomas Nazarko, the following colloquy took place between defense counsel, plaintiff's counsel and the court:

"Mr. Michael Nazarko: While the hotel was operating under chapter 11, the licensee, were you involved in making the budgets?

"Mr. Thomas Nazarko: Yes.

"[Plaintiff's Counsel]: I'm going to object, Your Honor. It's beyond the scope of cross.

"Mr. Michael Nazarko: He was talking about the chapter 11, Your Honor."

"The Court: No. That's not—I'll sustain the objection."

terminates if East Lyme Partnership files a bankruptcy petition.[8] The defendants contend that they were discharged from liability for the debt of East Lyme Partnership when it filed a bankruptcy petition on June 19, 1995.

Where, as here, there is definitive contract language that leaves no room for interpretation, the determination of the intent of the parties' contractual commitments is a question of law. See *Levine* v. *Massey*, 232 Conn. 272, 277–78, 654 A.2d 737 (1995). When the trial court reaches conclusions of law, the scope of our appellate review is plenary, "and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *ALCA Construction Co.* v. *Waterbury Housing Authority*, 49 Conn. App. 78, 86, 713 A.2d 886 (1998).

The trial court reached a proper conclusion of law. The relevant language of § 19 (c) of the license agreement, stating that the license shall terminate if the licensee files for bankruptcy protection, is what the Bankruptcy Code terms an ipso facto or bankruptcy termination clause. An ipso facto clause is a provision found in an unexpired lease or executory contract that terminates solely due to the financial condition or bankruptcy filing of a party. *In re Lee West Enterprises, Inc.*, 179 B.R. 204, 209 (Bankr. C.D. Cal. 1995). Although for many years such clauses were permitted, in 1978 the Bankruptcy Code rendered such ipso facto clauses ineffective after the commencement of a bankruptcy

---

[8] Section 19 (c) of the license agreement provides in relevant part: "The license shall automatically and immediately terminate without notice if any involuntary proceeding in bankruptcy is filed against the licensee which is not dismissed within sixty days of filing, any voluntary proceeding in bankruptcy is filed by [the] licensee, [the] licensee is dissolved or liquidated, a receiver is appointed for [the] licensee or hotel, or [the] licensee makes any assignment for the benefit of creditors."

proceeding. 11 U.S.C. § 365 (e);[9] *In re Lafayette Radio Electronics Corp.*, 7 B.R. 189, 191–92 (Bankr. E.D.N.Y. 1980); cf. *Bargain Mart, Inc.* v. *Lipkis*, 212 Conn. 120, 130, 561 A.2d 1365 (1989).

The rationale of Congress at the time was to aid the debtor's rehabilitation efforts, presumably by allowing the debtor to retain profitable contracts with other parties. See H.R. Rep. No. 595, 95th Cong., 1st Sess., 348 (1977); S. Rep. No. 989, 95th Cong., 2d Sess., 59 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6304–6305.[10] The defendants, on the other hand, have attempted to turn § 365 (e) on its head and use it as a shield against Days Inn's efforts to collect a valid debt. This the defendants cannot do. The relevant clause in the franchise agreement is an ipso facto clause and, thus, is unenforceable after the commencement of a bankruptcy case. The trial court correctly found that the bankruptcy

[9] Title 11 of the United States Code, § 365 (e) provides in relevant part: "(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—

"(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

"(B) the commencement of a case under this title . . . ."

[10] The legislative history provides in relevant part: "Subsection (e) invalidates ipso facto or bankruptcy clauses. These clauses, protected under present law, automatically terminate the contract or lease, or permit the other contracting party to terminate the contract or lease, in the event of bankruptcy. This frequently hampers rehabilitation efforts. . . .

"The unenforceability of ipso facto or bankruptcy clauses proposed under this section will require the courts to be sensitive to the rights of the nondebtor party to executory contracts and unexpired leases. . . .

"This subsection does not limit the application of an ipso facto or bankruptcy clause to a new insolvency or receivership after the bankruptcy case is closed. That is, the clause is not invalidated in toto, but merely made inapplicable during the case for the purposes of [disposition] of the executory contract or unexpired lease." 1978 U.S.C.C.A.N. 6304–6305.

of East Lyme Partnership did not excuse the defendants from liability as personal guarantors.

## III

The defendants next claim that the trial court's failure to allow them to amend their answer was improper. Paragraph three of the fourth count of Days Inn's complaint alleges that "[i]n consideration for [Days Inn] extending credit to the defendant, the 161 Hotel Group, Inc., the defendant, Thomas Nazarko, personally guaranteed payment for all amounts owed by the 161 Hotel Group, Inc., to [Days Inn] . . . ." Paragraph three of the fifth count uses the same language but substitutes Michael Nazarko's name for that of Thomas Nazarko. The allegations in both paragraphs were admitted by the defendants in their answer. At trial, the defendants sought to offer evidence in contradiction of those admissions to show that East Lyme Partnership was the actual licensee. The defendants sought to admit this evidence because they believed that the issue of liability revolved around the identity of the licensee and that the guarantee signed merely was ancillary. The court sustained Days Inn's objection, reasoning that both defendants admitted in their answer to having personally guaranteed payment for sums owed.

An admission in a defendant's answer to an allegation in a complaint is binding as a judicial admission. *Lutkus* v. *Kelly*, 170 Conn. 252, 257, 365 A.2d 816 (1976). "An admission in pleading dispenses with proof, and is equivalent to proof." *Connecticut Hospital for the Insane* v. *Brookfield*, 69 Conn. 1, 4, 36 A. 1017 (1897). It is "the full equivalent of uncontradicted proof of these facts by credible witnesses"; *Cassidy* v. *Southbury*, 85 Conn. 221, 223, 82 A. 198 (1912); and is "conclusive on the pleader." *Rodearmel* v. *Rodearmel*, 173 Conn. 273, 275, 377 A.2d 260 (1977); *Cross* v. *Hudon*, 42 Conn. App. 59, 65, 677 A.2d 1385, cert. denied, 239 Conn. 932,

683 A.2d 400 (1996). "A party is bound by a judicial admission unless the court, in the exercise of its discretion, permits the admission to be withdrawn, explained or modified." *United Electrical Contractors, Inc.* v. *Progress Builders, Inc.*, 26 Conn. App. 749, 753–54, 603 A.2d 1190 (1992).

The trial court did not abuse its discretion by excluding the defendants' evidence on the ground that they had admitted in their answer that they were personal guarantors. The defendants' motion to amend was the product of their own negligence. Even if the evidence was admitted, it would have had no practical effect because it would not have "open[ed] to attack" the admission already settled in the answer. *Cassidy* v. *Southbury*, supra, 85 Conn. 223–24 (admission into evidence of written notice of injuries would not permit attack on legal sufficiency of description of injuries where defendant had admitted in answer having received notice). "The admission had settled that issue. Such a doctrine is indispensable in preserving regularity and stability in a system of pleading and essential in securing fairness in a trial. Our courts have so ruled from earliest time." Id., 224. Thus, admission of the evidence would have had no effect on the ultimate conclusions of the trial court because it would not have excused the defendants from liability under the personal guarantees they signed. Simply put, East Lyme Partnership received services provided to it by Days Inn while in bankruptcy, those services remained unpaid and the defendants were liable for payment as personal guarantors.

IV

The defendants next claim that the trial court improperly excluded from evidence a document showing the formation of East Lyme Partnership. As noted previously, we will not overturn a conclusion of a trial

court on an evidentiary matter unless it manifests a clear abuse of discretion. *State* v. *Hines*, supra, 243 Conn. 801.

As with the defendants' two prior evidentiary challenges, the trial court did not abuse its discretion because it correctly noted that the creation of East Lyme Partnership and its ultimate demise were irrelevant to whether the defendants were responsible for the debt of East Lyme Partnership as a result of the guarantee they signed. The guarantee exists independently of the defendants' status as partners in the partnership. We conclude, therefore, that the trial court was not required to admit evidence of the formation of East Lyme Partnership.

V

In their final claim, the defendants contend that the trial court was required to find the partnership liable before proceeding against them as partners. Again, we do not find the status of the defendants as partners relevant to establishing their liability for the debt of East Lyme Partnership because Days Inn sued the defendants as guarantors. In a supplemental guarantee agreement they signed, the defendants waived the requirement that Days Inn proceed against East Lyme Partnership for payment before proceeding against them.[11] If East Lyme Partnership were found owing

---

[11] The supplemental guarantee agreement, signed by the defendants in their individual capacities, provides in relevant part: "The undersigned waive, to the extent permitted by applicable law, notice of acceptance, notice of default, presentment and demand. Upon default by licensee and receipt of written notice from [Days Inn], the undersigned will immediately make each payment and perform or caused to be performed each obligation of licensee under the agreement. [Days Inn] may to the extent permitted by applicable law (without affecting any obligation of any of the undersigned) waive any licensee default, extend any licensee cure period, or settle, adjust, compromise or release any indebtedness of or claims against licensee. The undersigned waive notice of amendment of the license agreement and demand for payment or performance by licensee. The undersigned further waive the defenses of novation, increase in risk, release or compounding

Days Inn, the defendants were similarly exposed. Days Inn may proceed directly against the defendants for payment on the debt. See *Beach* v. *Beach*, 141 Conn. 583, 592, 107 A.2d 629 (1954); *Perry* v. *Cohen*, 126 Conn. 457, 460–61, 11 A.2d 804 (1940). We conclude that the trial court did not have to determine that the partnership was liable for the debt before proceeding against the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.

of any other guarantor, or any requirement that [Days Inn] first exhaust other remedies, resort to any collateral, or proceed diligently to collect any amounts due from licensee, this guarantee agreement being a primary obligation of the undersigned and a guarantee of payment and performance, not of collection."