[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION (MOTION FOR SUMMARY JUDGMENT)
This is a civil action brought by the plaintiff, Paul A. Gaynor, in his capacity as the Administrator of the Estate of the late Mary Catherine Ix Gaynor, against his predecessor fiduciary of the Estate, defendant S. Giles Payne and the law firm of Brody and Ober, P.C. of which the defendant Payne was an employee and member.
In each of the first three counts of the original complaint dated April 23, 1998, the plaintiff-administrator has alleged a separate theory of liability against defendant Payne arising from his service as the decedent's attorney during her lifetime prior to her death on June 1, 1996, and from his serving, thereafter, as the Executor of her decedent's Estate, until his resignation as Executor on March 25, 1997. In the Fourth Count, the plaintiff has alleged that the defendant, Brody and Ober, P.C., is liable under the doctrine of respondent superior for each of the theories of liability alleged against the defendant Payne in the first three counts of the Complaint. The First Count against defendant Payne, who is an attorney, alleged negligence; while the Second Count and the Third Count allege a breach of fiduciary duty and a breach of contract, respectively.
In responsive pleadings dated June 18, 1998, the defendants have CT Page 13702 alleged three special defenses. The First Special Defense alleges that a March 21, 1997 document titled "Release and Waiver of Claims Agreement" bars and precludes the Estate from making any recovery on any of the claims made against the defendants under the doctrine of accord and satisfaction.
By way of the Second Special Defense, the defendants have alleged that by virtue of certain representations made and confirmed by the plaintiff and other beneficiaries of the Estate in the March 27, 1997 written agreement, the plaintiff Estate should be estopped and precluded from a recovery on any claims alleged.
In the Third Special Defense, the defendants allege that the Branford Probate Court's decree of March 25, 1997 approving defendant Payne's Final Account as Executor of the Estate precludes the plaintiff from making any recovery on the claims set forth in the four counts of the Complaint.
On May 22, 2000, the court, acting by Nadeau, J. allowed the plaintiffs to amend the original complaint: The Amended Complaint, once again contains four counts. While the four counts of the Amended Complaint contain additional allegations by the plaintiffs, they remain based in allegations against the defendants sounding in negligence, breach of fiduciary duty, breach of contract and respondeat superior, as noted, by this court when referring to the counts alleged in the plaintiffs' original Complaint.
Upon inquiry by this court, the parties have agreed that the defendants' Answer and Special Defenses filed in response to the original Complaint shall continue to apply to this consideration of the motion for summary judgment. The parties have also agreed that the various memorandums of law, affidavits and documentary exhibits filed in response to the motion for summary judgment are also applicable to the Amended Complaint. Despite the fact that the motion for summary judgment is addressed to the original Complaint, the parties have agreed that the motion is applicable to the Amended Complaint, as well, and have requested that the court proceed to decide the merits of the motion for summary judgment without requiring the parties to re-file the motion for summary judgment, and their respective legal memorandums of law.
The defendants have moved for summary judgment on two grounds. First, the defendants maintain that the written release signed by decedent's children, beneficiaries under the decedent's Will, constitutes an accord and satisfaction, barring this action by Paul Gaynor in his capacity as the current administrator of the decedent's estate. Paul Gaynor, as a child of the decedent and in his capacity as a beneficiary, was one of CT Page 13703 the children signing the aforementioned release. Second, the defendants claim that this action is barred under the doctrine of res judicata by reason of the Branford Probate Court's acceptance on March 25, 1997 of defendant Payne's final accounting as Executor of the estate.
The legal standards applicable to summary judgments are well established. "A Motion for Summary Judgment is designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279 (1989). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Hertz Corp. v. FederalIns. Co., 245 Conn. 374, 381 (1998). In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any issues exist. Nolan v. Borkowski,206 Conn. 495, 500 (1988). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. HertzCorp. v. Federal Ins. Co., supra, 245 Conn. 381. "The opposing party must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Id. "A material fact is a fact which will make a difference in the result of a case." Suarez v. DickmnontPlastics Corp., 229 Conn. 99 (1994).
 I.
The defendants claim that under the doctrine of accord and satisfaction, the "Release and Waiver of Claims Agreement" dated March 21, 1997, bars and precludes the plaintiff, as Administrator of the decedent's estate, from making any recovery on any of the claims alleged against the defendants in the four counts of the Amended Complaint. In order to analyze this claim, the court must state the facts as it understands them to be.
The defendant Payne was appointed by the Branford Probate Court as the Executor of the decedent's estate after the decedent's death on June 1, 1996. At the time of the decedent's death the sole statutory heirs and testamentary beneficiaries of her estate were her son, Paul A. Gaynor, her son Attorney Gerald M. Gaynor and her daughter Mary Ellen Gaynor Stewart and their respective heirs collectively hereinafter referred to as the Gaynor Estate beneficiaries.
During the month of March 1997, as a result of certain disputes which developed between the defendant Payne and the decedent's three children, the three children filed an "Application for Removal of Fiduciary and Appointment of Successor" with the Branford Probate Court. This application accuses the defendant Payne of an abuse of trust; ineffective assistance of counsel; negligence; abuse of his powers as Executor of the CT Page 13704 Estate; negligence in administering the financial assets of the Estate; and, a conflict of interest.
As a result of this dispute between the parties, negotiations commenced, the result of which, was the signing of a "Release and Waiver of Claims Agreement, dated March 21, 1997. The "Release" was signed by Paul A. Gaynor on March 19, 1997; Gerald M. Gaynor on March 19, 1997; Mary Ellen Gaynor Stewart on March 20, 1997; 5. Giles Payne on March 24, 1997; and William J. Britt, Vice President of Brody and Ober, P.C., All parties were represented by legal counsel of their choice, and it is noted that Gerald M. Gaynor, S. Giles Payne and William Britt are, in fact, themselves attorneys. In addition to the full execution of the "Release" by the parties noted herein, defendants Payne and Brody and Ober, P.C. waived certain rights to attorney's fees in various sums, that they maintained were owed by the Estate to the defendants. The defendants, therefore agreed to receive, and did receive, reduced attorney's fees from the Estate, as a result of the agreements between the parties. Additionally, the defendant Payne agreed to resign as the Executor of the Estate.
On or about March 19, 1997, in connection with the tendering of his resignation to the Branford Probate Court, the defendant Payne filed an Final Account with the Branford Probate Court, of his doings as Executor of the Estate.
Written waiver forms evidencing a lack of objection to the proposed Final Account filed by the defendant Payne were also filed by the following individuals: Attorney Gerald M. Gaynor, Attorney Robert L. Berchem, in behalf of Paul A. Gaynor and Mary Ellen Gaynor Stewart. All parties submitting waiver forms, evidencing "no objection: to the Final Account recited that they had no objection to the Branford Probate Court granting and approving the defendant Payne's Final Account.
On March 25, 1997 the Branford Probate Court, after a hearing, issued a decree approving the Final Account, and accepted the resignation of the defendant Payne as the Executor of the Estate. There has been no appeal taken from the decree of the Branford Probate Court, nor has any motion for reargument or reconsideration of the decree been filed. As a result of the resignation of the defendant Payne as Executor, the Branford Probate Court in its decree of March 25, 1997, appointed Paul Gaynor, as Administrator of the Estate.
The plaintiff maintains that the "Release" was not signed by the Gaynor Family Trust or the decedent's grandchildren who as remainder beneficiaries under the "Trust" are the primary beneficiaries of the Will of the decedent. Therefore, the current action by the Administrator Paul CT Page 13705 A. Gaynor, who did sign the "release" in his capacity as a beneficiary, is not foreclosed because all of the beneficiaries did not sign the release.
The decedent, was survived, as noted herein, by her three children, Attorney Gerald Gaynor, Paul Gaynor and Mary Stewart Gaynor. There are four grandchildren, two of whom are the children of Paul Gaynor and two of whom are the children of Attorney Gerald Gaynor. Under the terns of the Will, the decedent left all of her tangible personal property to her children and all the rest of her property to the trustee of the Gaynor Family Trust. The Will provides that the trust income goes to the decedent's three children during their lifetimes and the corpus of the Trust is to be delivered to the grandchildren upon the death of the decedent's children. Therefore, the plaintiff argues, that the "Release" even if valid, did not waiver any rights of the grandchildren.
The defendants argue in opposition to the plaintiff's position, that the plaintiff, his brother/and his sister did have the power to release and to convey away whatever rights the Estate might have on behalf of the Trust and/or the grandchildren. The defendants point out, among other things, that the three children under the Will, would not only receive all income from his or her respective one-third share of the trust fund, but could also receive all, or as much of, the principal of his respective one-third share as the trustee might see fit to pay him or her; thereby leaving nothing to be passed on to their respective issue at the time of each of the three children's death.
There is no dispute that on March 21, 1997, when the "Release and Waiver" was executed by each of the decedent's three children, Paul and Gerald Gaynor each had two minor children of their own and these minor children are the referred to "grandchildren of the decedent."
In recognition that these grandchildren may have an interest in Estate proceeds, the Branford Probate Court appointed an independent attorney to act as the guardian ad litem for the grandchildren. In addition, the defendants argue, the "Release and Waiver" was executed by the decedent's three children on behalf of their respective heirs, successors and assigns.
The language of the "Release and Waiver" recites among other things that by executing the agreement the Releasors (the three children) hereby:
 "forever release, discharge, and acquit Payne and the Corporation from any and all claims, demands, obligations, liabilities, indebtednesses, breaches of CT Page 13706 contract, breaches of duty or any relationship, acts, omissions, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses, of every type, kind, nature, description, or character and irrespective how, why, or by reason of what facts, whether heretofore or now existing, of which could, might or may be claimed to exist of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, whether at law equity or in administrative proceedings, whether at common law or pursuant to federal, state or local statutes"
The "Release and Waiver" further acknowledges that it is a document that is the result of negotiations between the respective parties and that each party had the opportunity to obtain the advice of counsel of their own choosing in connection with the negotiations and preparation, execution and the delivery of the release. Each party signing the "Release" state that they read the Release, and/or have had the Release read to them by their counsel, and that it was fully explained to them by their counsel, and that they each, were fully aware of its content and legal effect.
"Where there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord". "Upon the acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract of accord is supported by consideration." CountyFire Door, Corporation v. C.F. Wooding Co., 202 Conn. 277, 281-283,520 A.2d 1028 (1987); Kelly v. Kowalsky, 186 Conn. 618, 621, 442 A.2d 1355
(1982); 2 Restatement (Second) of Contracts (1981) 281. The court agrees with the defendants that the three Gaynor children acknowledged that it was their intent to bind themselves jointly and severally and were also acting on behalf of their successors, heirs, and assigns, when the three Gaynor children signed the "Release and Waiver of Claims Agreement." Within the "Release" they acknowledged that they received valuable and sufficient consideration for agreeing to those things recited in the "Release." In addition, they obtained concessions from the defendants who agreed to reduce their attorney's fees, and from the defendant Payne, who agreed to resign his position as Executor of the Estate.
The court also agrees that the components of the Releasor's commitments in the "Release" are so clear and definitive, that the determination of what the parties intended by those contractual commitments is a question CT Page 13707 of law for resolution by this court. Resino v. Atlantic Bank of NewYork, 244 Conn. 85, 92, 709 A.2d 540 (1998); Levine v. Massey,232 Conn. 272, 277-78, 654 A.2d 737 (1995); Days Inn of America, Inc. v.161 Hotel Group, Inc., 55 Conn. App. 118, 124, 739 A.2d 280 (1999).
 "Although ordinarily the question of contract interpretation, being a question of the parties intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law . . . Tallmadge Brothers v. Iroquois Gas Transmission System, 252 Conn. 479 (2000)."
In accordance with this principle, cases have held that the contract language at issue was so definitive as to make the interpretation of that language a question of law subject to plenary review by this court.Issler v. Issler, 250 Conn. 226, 235-236, 737 A.2d 383 (1999); see also 3A. Corbin Contracts (4th Ed. 1999) § 554, pp. 223-225; 11Williston, Contracts (4th Ed. 1999) § 30:6, pp. 77-83.
The Tallmadge case, notes that in the majority of cases considering contract interpretation a matter of law, the disputed agreement was a commercial contract between sophisticated commercial parties with relatively equal bargaining power. Tallmadge Brothers v. Iroquois GasTransmission System, supra, 252 Conn. 479, 496. The present case, while not commercial in nature, also however, presents us with sophisticated parties of relatively equal bargaining power. One of the three children of the decedent is an attorney; the defendant Payne is an attorney; and the defendant Brody and Ober is a professional corporation law firm. Additionally, all three of the decedent's children including Attorney Gerald Gaynor, sought and retained the services of a law firm to represent their interests. The defendants also sought additional legal assistance during the course of the foregoing proceedings. Surely, none of the parties can claim to have been at a disadvantage in the negotiations; the drafting and signing of the "Release and Waiver"; or in the lack of objection to the Final Account filed in the Branford Probate Court by the defendant Payne.
Although these factors are not always dispositive of the proper standard of review in every set of circumstances, they do raise a presumption of definitiveness that, in this case, has not been rebutted by any other evidence in the record. This court concludes that the parties "meant what they said, and said what they meant" in definitive terms. Id. at 496-497. CT Page 13708
In determining the parties intent a court should use a fair and reasonable construction of the written words. A court should not torture words to import ambiguity where the ordinary terms leave no room for ambiguity. Lawson v. Whitey's Frame Shop, 241 Conn. 678-686 (1997).
The actual words used in the "Release and Waiver Agreement" leave no doubt in the court's mind that the decedent's children intended to release the defendants, their heirs, successors and assigns, from all liability past, present and in the future, which might arise from the defendant Payne's representation of the decedent during her lifetime and his handling of her Estate after her death. The language of the portions of the "Release" recited herein makes that abundantly clear. The three children of the decedent have no cause of action against the defendants.
The plaintiff, however, maintains that the Trust and the four grandchildren are not, however, bound by the terms of the "Release" as they were not signatories to the document, despite the fact that their parents were, and these same parents were represented by legal counsel. As noted, one of these parents, Gerald Gaynor, is in fact, an attorney himself. The grandchildren, it is also noted, were represented by an attorney appointed by the Branford Probate Court as a guardian ad litem, and in his capacity as such, raised no objection to the Final Account, accepted by the Probate Court. Having determined that the decedent's three children intended to bind their heirs, successors and assigns, the court must consider whether the had the power to, release any claims by the grandchildren as remainder beneficiaries. The plaintiff argues that there is no Connecticut decision holding that a written release signed by the beneficiaries is binding upon and forecloses a legal action by the Administrator in his capacity as the fiduciary for the estate. The plaintiff further argues that under the terms of the testamentary trust, the parents of the grandchildren were not given any right or interest in the principal. However, the plaintiff does not disagree that the Will by its terms allows the Trustee in his discretion may "pay to the child the entire net income of the Trust, together with so much of the principal thereof as my Trustee in his discretion deems necessary . . .", leaving the possibility that all trust principal could be depleted during the lifetime of the child. The implication is, obviously, that there may not be any principal balance left in the Trust, for any grandchild to inherit.
The Probate Court's decree on March 25, 1997, approving defendant Payne's Final Account extended to all of his handling of any and all assets which the Estate may have possessed during his tenure as Executor. The beneficiaries, who were represented by counsel, and the guardian ad litem, filed no objections or appeals to this decree. The plaintiff in his individual capacity as a beneficiary, and as the parent CT Page 13709 of two of the grandchildren, is deemed to have had personal knowledge of the contents of the Final Account. Furthermore, the plaintiff, along with his two siblings, was a party to the petition to have the defendant Payne removed as the Executor, and is also deemed to have been aware of the allegations against the defendant Payne that were set forth in the removal petition.
When the decedent died, her three children and their respective heirs, as sole statutory heirs and as the sole remaining beneficiaries of the Will, immediately acquired their collective rights in the assets of the decedent's Estate. Bartlett v. Bartlett, 220 Conn. 372, 379, 599 A.2d 14
(1991) They become beneficial owners, as tenants in common, of the Estate's assets, subject to the payment of debts. The vesting of those ownership rights in the Gaynor Estate beneficiaries, empowered those beneficiaries, when acting collectively, to release and to convey to whatever rights they collectively, or the Estate itself, might have had to prosecute the claims which have now been alleged against the defendants. Woodhouse v. Phelps, 51 Conn. 521, 522-523 (1884). The plaintiff, as Administrator is bound by the "Release and Waiver" instrument executed by all the Estate's beneficiaries. "It is well settled that a person's right of inheritance vests at the moment of the decedent's death." Emanuelson v. Sullivan, 147 Conn. 406. 409 (1960), and that "although distribution occurs a considerable time thereafter, it relates back to the date of death, as the time when the beneficiary became fixed." Blodgett v. Bridgeport City Trust Co., 115 Conn. 127, 144
(1932).
The plaintiff argues that "it is axiomatic that the administrator of an estate is a fiduciary responsible for protecting the interests of all beneficiaries." The court assumes that the plaintiff implies when he says "all beneficiaries" that the grandchildren are included in the term "all beneficiaries". Yet it is this same Administrator, who negotiated and signed the "Release and Waiver" in his capacity as one of the three children of the decedent. It is this same Administrator who is the parent of two of the grandchildren he now purports to protect. It is the same Administrator who did not appeal the decree of the Branford Probate Court in accordance with Connecticut General Statutes § 45a-186 and 45a-187. It is this same Administrator, who one year after the execution of the "Release and Waiver" comes to court seeking to advance the types of claims that were obviously contemplated by the parties when executing the "Release and Waiver Agreement."
The Court finds that the Release signed by Paul Gaynor, Gerald Gaynor and Mary Gaynor Stewart effectively disposed of any claim that they might have against the defendants. The court additionally finds that the signing of the "Release" by these three beneficiaries binds the Estate CT Page 13710 and the Administrator to the terms of the "Release." The Court lastly finds that, by its very terms, the "Release" was signed on behalf of each of the four grandchildren by their respective fathers, Paul and Gerald Gaynor, and effectively disposed of whatever interest any of those four minor grandchildren may have had in the claim which is the subject of this action.
Based upon the evidence and arguments submitted to the court, the court finds that the defendants had every reason to rely on the terms of the Release and Waiver of Claims Agreement dated March 21, 1997, as a bar to the type of civil action being advanced by the plaintiff Administrator. They had a right to believe that a "deal was a deal." The court has no hesitation in believing that the three children of the decedent, plaintiff among them, felt the same when they all signed the Release and Waiver of Claims Agreement.
The court finds no reason to consider the remaining arguments raised by the parties. The discussion regarding the validity of the "Release and Waiver of Claim Agreement" is dispositive of the issue.
Accordingly, the defendant's motion for summary judgment as to all four counts of the plaintiff's Amended Complaint, is hereby granted.
THE COURT
ARNOLD, J.