[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff is a Connecticut corporation with an office in the Town of North Branford, and the defendant is a Connecticut corporation with an office in the Town of Branford. The plaintiff is an employment agency which places temporary employees with clients who wish to fill a particular job on a temporary basis. The temporary employee remains as an employee of the plaintiff unless the client decides to hire the employee on a permanent basis.
In this case Earl Tucker, III, vice-president of the defendant contacted the plaintiff on February 20, 2001 and placed an order for an accounts payable clerk with computer skills. He spoke with Linda Torino, who was the plaintiffs personnel consultant. Ms. Torino then reviewed her records to see who it had that would be fit for the job. Based on a job resume and a letter of recommendation Ms. Torino decided that Jennifer Hendricks appeared to have the qualifications for the job. She then contacted Mr. Tucker and Ms. Hendricks, made the necessary financial arrangements with each of them, and set up an interview by the defendant for the following day. The purpose of the interview is so that the prospective employer can decide if it wishes to use the temporary employee. Shortly after the scheduled interview Ms. Torino received a telephone call from the defendant informing her that they were going to hire Ms. Hendricks as a temporary employee. Ms. Hendricks had to give notice to her then employer and therefore did not start working for the defendant until March 5, 2001.
On February 23, 2001 the plaintiff received another call from the defendant placing an order for someone to answer the phone and type bids. Ms. Torino followed the same process as she had with Ms. Hendrix and the defendant hired Sheryl Zacharias. Ms. Zacharias started work for the defendant on February 26, 2001.
The financial arrangement between the plaintiff and the defendant with respect to both employees was the same. As indicated above, the CT Page 16119 individuals remained as employees of the plaintiff. The defendant agreed to pay the plaintiff $15.90 per hour for the services of each employee. This sum covered the hourly rate which the plaintiff would pay the employee plus a fee for taxes, FICA, and administrative costs incurred by the plaintiff. At the end of each week the employee would prepare a time record certifying the days and hours per day that she had worked. The employee would submit the completed form to a representative of the defendant who would then sign the form certifying to the accuracy of the hours worked and that the work performed was satisfactory. The employee would then submit the completed time record to the plaintiff who would pay the employee at the hourly rate which had been agreed upon between the employee and the plaintiff. The plaintiff would then submit an invoice to the defendant for payment. The time record also provided that in the event that the temporary employee was hired by the defendant within twelve months as a permanent employee then the defendant would pay the plaintiff $2,000 as liquidated damages.
In accordance with the foregoing procedure the plaintiff received completed time records from Ms. Zacharias showing days and hours worked for the weeks ending March 3, 11, 18 and 25, 2001. The plaintiff also received completed time records from Ms. Hendricks for the weeks ending March 11 and 18, 2001. Invoices covering the two employees were sent each week by the plaintiff to the defendant. The final invoice is dated March 26, 2001 covering the week ending on March 25, 2001. At the end of March the four invoices totaled $3,684.71, covering both employees, and none had been paid. During Ms. Hendricks' second week, Mr. Tucker advised Ms. Torino that Ms. Hendricks was not satisfactory and would be terminated at the end of the week. Ms. Torino was also advised by someone on behalf of the defendant that the defendant was going to hire Ms. Zacharias as their own full-time employee after March 25, 2001. On April 2, 2001 Ms. Torino sent an invoice for the liquidated damages of $2,000 plus tax of $120 to the defendant. The invoice referred to the charge as a "buy-out fee." The court notes that the time record states that the liquidated damages would be paid if the employee becomes employed by the defendant within twelve months, and that Ms. Torino testified that the time frame was 480 hours which would be twelve forty hour weeks. It is clear that the defendant hired Ms Zacharias after four weeks which was well within either time frame. On April 3, 2001, Mr. Tucker sent a check payable to the plaintiff for $3,684.71 which was the amount due on the invoices covering the hourly charges for the two employees. The check bore the notation "Payment. Final and Full." The check was accepted and deposited in the plaintiffs bank. Thereafter, despite repeated demands by the plaintiff, the defendant has refused to pay the invoice for the buy-out fee which totals $2,120 including tax. CT Page 16120
This litigation began when the plaintiff filed a small claims writ seeking payment of $2,120. The defendant then had the matter transferred to the regular docket, and filed an answer denying all of the plaintiffs allegations, two special defenses and a counterclaim. The first special defense claims an accord and satisfaction, and the second special defense was withdrawn at trial. The counterclaim alleges that the plaintiff breached its agreement with the defendant to provide a qualified temporary accounts payable employee, and that as a result of Ms. Hendricks' alleged negligence the defendant has suffered money damages. The plaintiff then filed an amended complaint seeking payment of the buy-out fee alleging a breach of contract and unjust enrichment.
The evidence proves that the agreement between the plaintiff and the defendant required the defendant to pay the plaintiff at an agreed hourly rate for the services of Ms. Zacharias and Ms. Hendricks, and to pay a buy-out fee if either employee was hired as a permanent employee by the defendant within a twelve month period. Ms. Zacharias was hired by the defendant four weeks after she started work as a temporary employee. The defendant has paid what was owed for the services of the two employees. There remains payable under the contract the sum of $2,120 for the buy-out fee unless the defendant proves its first special defense.
The first special defense alleges that the defendant paid the plaintiff in full for all services rendered by the plaintiff in connection with the employment of Sheryl Zacharias on April 3, 2001, and therefore the plaintiff is estopped from any recovery on the complaint based upon an accord and satisfaction.
According to the defendants' post-trial brief the accord and satisfaction defense is based on the provisions of Connecticut General Statutes § 42a-3-311, which provides" "(a) if a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument,' then `(b) . . . the claim is discharged if the person against whom the claim was asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.'"
Connecticut case law is in accord with the provisions of § 42a-3-311, "When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim." County Fire Door Corp. v. CF. Wooding Co., 202 Conn. 277, 281, CT Page 16121520 A.2d 1028 (1987). "An accord is a contract between creditor and debtor for the settlement of a claim by some performance other than that which is due. Satisfaction takes place when the accord is executed." W.HMcCune, Inc. v. Revzon, 151 Conn. 107, 109, 193 A.2d 601 (1963). Without a mutual assent, or a "meeting of the minds," there cannot be a valid accord. Crucible Steel Co. v. Premier Mfg. Co., 94 Conn. 652, 656, 110 A.52 (1920). Herbert S. Newman Partners v. CFC Construction Ltd.Partnership, 236 Conn. 750, 764 (1996).
It is clear that one of the elements that the defendant must prove in order to prevail on a defense of accord and satisfaction is that the claim was either unliquidated or was the subject of a bona fide dispute.
In its memorandum the defendant claims that there was a bonafide dispute concerning the amount owed to the plaintiff, and that the plaintiffs claim was unliquidated, both because of the alleged financial losses sustained by the defendant as a result of the negligence of Ms. Hendricks.
The evidence shows that sometime during the second week of Ms. Hendricks' employment, which would be during the week ending March 16, 2001, Mr. Tucker informed Ms. Torino that he was dissatisfied with Ms. Hendricks and was terminating her at the end of the week. Ms. Torino told him that if he was unhappy with Ms. Hendricks she would try and find someone else. There is no evidence that Mr. Tucker or anyone else connected with the defendant told anyone connected with the plaintiff on or before April 3, 2001 that the defendant was disputing the amount owed because it had been damaged as a result of Ms. Hendricks' employment, or that the defendant was making any claim for money arising out of Ms. Hendricks' employment. When the defendant sent its check on April 3, 2001 in the amount of $3,684.71 the defendant had not indicated that there was any dispute over the amount due and the plaintiffs claim therefore was liquidated. It consisted of $3,684.71 for the services of Ms. Zacharias and Ms. Hendricks, plus $2,120 for the buy-out fee in connection with Ms. Zacharias for a total liquidated amount due of $5,804.71. The defendant has failed to prove that, as of April 3, 2001, either the plaintiffs claim was unliquidated or that the amount of the indebtedness was in dispute, and therefore has failed to prove the special defense of accord and satisfaction.
The defendant's special defense of accord and satisfaction and the counterclaim have been filed in the alternative. In the event that the court finds that the special defense of accord and satisfaction has been proven, then the counterclaim is not being pressed. In the event the court finds that an accord and satisfaction has not been proven then the CT Page 16122 defendant is proceeding on the counterclaim. Since the court has found that the defendant has failed to prove an accord and satisfaction it will now consider the counterclaim.
In the counterclaim the defendant alleges that on March 5, 2001 the plaintiff placed a temporary employee, Jennifer Hendricks, with the defendant to perform accounts payable services for the defendant, that from March 5, 2001 through March 16, 2001 Ms. Hendricks negligently performed her duties and caused the records of the defendant to be put in disarray, that the defendant has incurred in excess of $4,000 to correct its records, and that the plaintiff breached its agreement with the defendant to place a qualified temporary accounts payable employee with the defendant thereby causing damages. Since the file does not contain an answer to the counterclaim the court will consider the allegations as being denied.
There was no express written contract between the parties in connection with the services of Ms. Hendricks. What the implied agreement was is to be determined on the basis of the facts found by the court.
The evidence shows the following. On February 20, 2001 Mr. Tucker telephoned the defendant's office and spoke to Ms. Torino. He was interested in obtaining the services of an accounts payable clerk with computer knowledge who he could hire on a temporary basis. Ms. Torino consulted her records and, based on a resume prepared by Ms. Hendricks and a letter of recommendation from a previous employer, she concluded that Ms. Hendricks appeared to have the qualifications for the job. She then talked to Ms. Hendricks and Mr. Tucker and agreed on the hourly rate to be paid by the defendant to the plaintiff in the event Ms. Hendricks was hired. She also set up an interview for Ms. Hendricks with the defendant for the following day, and sent Ms. Hendricks' resume to the plaintiff. Although Ms. Hendricks remained on the books of the defendant as its employee, the decision as to whether she was to be hired by the defendant as its temporary employee was solely the decision of the defendant.
The resume was sent to the defendant and the interview with the defendant was scheduled so that the defendant could decide whether it wished to hire Ms. Hendricks. If the defendant decided not to hire Ms. Hendricks then she would not have been hired. Ms. Torino assumes that she was interviewed on February 21 because shortly after the scheduled interview someone on behalf of the defendant called and said they were going to hire her. Darrell Tucker testified that "to the best of my knowledge" Ms. Hendricks did not appear for an interview. He also testified that the person who was responsible for hiring and discharging CT Page 16123 employees was his brother Earl. Earl Tucker was the person who would have interviewed Ms. Hendricks, made the decision to hire her, and then made the decision to discharge her. Neither Earl Tucker nor Ms. Hendricks testified, and it is not clear to the court whether she had an interview and, if she did not, why not. The plaintiff sent an individual to the defendant for consideration for employment who reasonably appeared to the plaintiff to have the necessary qualifications for the job. That was all that the plaintiff was obligated to do. The plaintiff did not guarantee that Ms. Hendricks could perform the particular job. The plaintiff was not responsible to the defendant for any mistakes that Ms. Hendricks might make or any negligence on her part. The defendant hired Ms. Hendricks. If that decision was made without interviewing her or having her demonstrate her skills in some fashion, then that decision was the defendant's and the plaintiff is not responsible for any alleged losses arising out of Ms. Hendricks' employment. The defendant has failed to prove its counterclaim.
In his memorandum of law, counsel for the plaintiff requests attorneys fees pursuant to Connecticut General Statutes § 52-251a. If this claim is to be pursued, it should be done by an appropriate motion.
Judgment may enter for the plaintiff Professional Employment 
Temporaries, Inc. on its complaint in the amount of $2,120. Judgment may also enter in favor of the plaintiff on the counterclaim filed by the defendant Empire Paving, Inc.
By the Court,
_______________________ William L. Hadden, Jr. Judge Trial Referee CT Page 16124